## CARRIGAN v. DRAKE.

1. INFANTS—SERVICE—GUARDIAN AD LITEM.—The interest of infants in trust property is not bound by a mortgage executed by the trustee under an order of court, where it is not certainly shown that these infants were served with a summons in that proceeding, and it does appear from the record that the guardian *ad litem* was not appointed on proper application.

2. JURISDICTION—CONSENT—ESTOPPEL.—The right of a Circuit Judge to render a consent decree in 1883 outside of the county of the venue, cannot be afterwards questioned by the parties consenting, as against persons who lent them money on the faith of such decree.

3. TRUSTS—STATUTE OF USES.—Where real property is conveyed to a trustee, with power to sell and reinvest proceeds, if at any time he should deem it best for the interest of his *cestuis que trust*, a duty is imposed upon the trustee which requires him to hold the legal title, and the use is not executed by the statute.

4. RULE IN SHELLEY'S CASE—WORDS OF PURCHASE.—Real property, conveyed to a trustee, his heirs and assigns, for the use and benefit of his wife for life, and then for the heirs of her body, with power to sell and reinvest when deemed best for the interest of his wife and children, is not within the rule of Shelley's Case, for the reason that there is an unexecuted trust in the trustee, and that the use of the word "children" in the power indicates that "heirs of the body" were used as words of purchase.

5. MARRIED WOMEN—ESTOPPEL—DECREE.—The wife in this case was

not bound by her application for a loan of money on the security of this trust property, where the lenders knew that the money was to be used in a venture by her husband, nor is she estopped from denying her trustee's right to make mortgage of the property under decree of the court, in a proceeding to which she was a consenting party. But her adult unmarried daughter, who also consented, was bound by such decree.

6. RELIEF.—As against the trustee individually, and as against this daughter's interest in the trust property, the mortgagees were entitled to judgment.

Before WITHERSPOON, J., Chesterfield, February, 1890.

This was an action by Carrigan & Silcox against James F. Drake, as trustee, and his wife and children, for the foreclosure of a mortgage. To the full statement of the case made in the Circuit decree, it may be proper to add the following extract from the referee's report:

"Mrs. A. E. Drake and M. E. Drake (now Mrs. Hearn) accepted service of the petition, joined in the prayer, and consented that the case be heard at chambers, as did also James F. Drake, jr., who, according to the undisputed testimony, was a minor, nineteen or twenty years old. That a minor cannot under any circumstances accept service so as to bind himself, see *Finley* v. *Robertson*, 17 S. C., 439 ; *Riker* v. *Vaughan*, 23 *Id.*, 189. H. M. Tomlinson, signing himself as guardian *ad litem*, also signed the acceptance and consent. There is nothing in the record of this proceeding (which was put in evidence) to show that any papers were served on Henry, who was over fourteen, and petitioned for the appointment of a guardian *ad litem*, or· Lemuel and Francis, aged ten and four years respectively, or any one in their behalf. Gen. Prince, who was the attorney in this matter, testifies that he feels sure that a summons, or more probably a *subpœna ad respondendum*, was served on each of the minors, though he cannot after this length of time swear to it. He says they were not served with the petition, nor was any one with whom they reside served in their behalf. The record shows that H. M. Tomlinson accepted service of the petition as guardian *ad litem*, and consented to have the matter heard at chambers on the 3rd October, 1883, but he was not appointed guardian till

4th October. Nor does it seem that this is a mere mistake in the dates. All the preliminary orders of the judge, such as orders of reference, of appointment of guardian *ad litem,* &c., as well as the final order, are dated on the 4th, while the other papers so far as dated are on the 3rd."

The Circuit decree was as follows:

This is an action to foreclose a mortgage executed and delivered by James F. Drake, as trustee, to the plaintiffs, October 9th, 1883, to secure the bond of said trustee to plaintiff of same date for eight hundred dollars. On the 27th of February, 1878, the lot described in said mortgage was conveyed to the defendant, James F. Drake, his heirs and assigns, "in trust and confidence, nevertheless, for the use and benefit of his wife, the said Ann Eliza Drake, during her natural life, and at her death in trust for the heirs of her body, and at any time should the said James F. Drake, as trustee, deem it best for the interest of his said wife and children to sell said property and reinvest the proceeds, he is hereby empowered so to do." With funds arising from the sale of other trust property, a house and other improvements were placed upon the premises.

In 1883, the trustee, James F. Drake, applied to W. A. Carrigan, one of the plaintiffs, to borrow money to enable said trustee to rent the Railroad Hotel at Wadesboro, N. C., and to move his (the trustee's) family to said hotel, and to operate said hotel. W. A. Carrigan declined to make said loan, unless the trustee would procure an order from court authorizing said trustee to secure said loan by a mortgage of the trust premises, and also upon the further consideration that the trustee would embrace in said mortgage his individual debt of one hundred and fifty dollars. On or about the 3rd of October, 1883, in a petition entitled "The State of South, Chesterfield County, Common Pleas," in which the other defendants in this action were named as defendants, James F. Drake, as trustee, applied to Judge Pressley, a presiding judge, either at Bennettsville or Marion, for authority to execute and deliver said mortgage. The petition represented that James F. Drake was in poor health, out of employment, and unable to support his family. The petition also referred to the opportunity of renting the Railroad Hotel at Wades-

boro, N. C., and plaintiff's proposition to loan the money to enable the trustee to operate the hotel.

The following endorsement appears on the petition : "We acknowledge service of this petition and consent to the prayer thereof, and that the same be heard at chambers.   3rd October, 1883. (Signed)  H. M. Tomlinson, guardian *ad litem,* J. F. Drake, jr., M. E. Drake, A. E. Drake."  On the 4th October, 1883, it was referred by Judge Pressley to a special referee, "to inquire and report whether the facts stated in the petition are true, and whether it will be to the interest of the said Ann Eliza Drake and her children that the prayer of the petition be granted, with leave to report any special matter."   Upon the favorable report of the referee upon the facts stated in the petition, Judge Pressley, either at Bennettsville or Marion, passed the following order :  "Hearing the pleadings, it is ordered, that James F. Drake have leave, and is hereby authorized, to mortgage the property described in the pleadings to secure the repayment of the amount of money to be loaned on the security thereof.   4th October, 1883."

Under the authority of this order, the trustee executed and delivered to plaintiffs the bond and mortgage, dated October 9th, 1883, as aforesaid, upon receipt of six hundred and fifty dollars in money, including in said bond the individual debt of James F. Drake for one hundred and fifty dollars.   The lots embraced in plaintiff's mortgage are located in Chesterfield County.

All of the issues were referred to Edward McIver, Esq., as special referee, who filed his report 13th November, 1889, in which he recommended that plaintiff's complaint be dismissed. As I understand, the referee recommends that the complaint be dismissed on the grounds : 1. That it being the determination of rights or interests in land, under section 144 of the Code, Judge Pressley did not have jurisdiction, either at Bennettsville or Marion, to hear and determine the petition of James F. Drake, trustee.   II. That by the terms of the deed of February 27th, 1878, the trust is not executed, and that James F. Drake, as trustee, holds the title for his wife, Ann Eliza Drake, during her natural life, and at her death in trust for her children, the other

defendants in this action.    The cause was heard upon plaintiffs' exceptions to the referee's report.

The ninth exception alleges that the referee erred in holding that Judge Pressley did not have jurisdiction in the matter of the trustee's petition for authority to mortgage the trust property.    No issue as to title was raised by the trustee's petition. On the contrary, it is assumed in the petition upon which Judge Pressley's order is based, that the title to the trust property is in James F. Drake, as trustee, under the trust deed of February 27th, 1878.    The consent to the granting of prayer of the petition by Ann Eliza Drake and others, endorsed upon the petition, clearly indicates that no issue was raised before Judge Pressley, either as to title or as to any interest in the trust land.    The petitioner merely prayed that the Court of Equity, in the exercise of its discretion, would grant the trustee authority to mortgage the trust property to secure money to be borrowed for the benefit of the *cestui que trust*.    I think the referee erred in holding that Judge Pressley did not have jurisdiction, and the plaintiff's ninth exception is sustained.

In October, 1883, the defendants, James F. Drake, jr., Henry Drake, Lemuel Drake, and Francis Drake, were minors, and I concur with the referee in concluding that they were not properly made parties to the proceeding before Judge Pressley, and are not bound by said proceedings.    The eighth exception is therefore overruled.

The defendants, Ann Eliza Drake, and her daughter, Mary Hearn (formerly Drake), being of age when they accepted service and joined in the prayer of the petition of the trustee, are bound by the proceedings before Judge Pressley, and cannot deny the validity of plaintiff's mortgage as to their interest in the property embraced in said mortgage.    I do not purpose to review the order of Judge Pressley, so far as it affects Ann Eliza Drake and Mary Hearn, but it is necessary, under the exception, to consider the effect of the statute of uses under the terms of the deed dated February 27th, 1878, in order to ascertain the estate or interest that the other defendants (who are not bound by Judge Pressley's order) took under said deed.

It has frequently been held in this State, that in order to pre-

vent the operation of the statute of uses, some duty must be imposed upon the trustee by the terms of the instrument creating the trust, which rendered it necessary that the title should remain in the trustee. *Wieters* v. *Timmons*, 25 S. C., 493; *Ayer* v. *Ritter*, 29 *Id.*, 135. As I understand it, the instrument creating the trust must impose upon the trustee an obligation, the performance of which the court could compel. No such duty or obligation is imposed upon the trustee by the terms of the deed of February 27th, 1878. It is true that the trustee is authorized in his discretion to sell and reinvest the proceeds. The trustee being left to the unrestrained exercise of his own judgment and will, the court could not control the exercise of the trustee's discretion in the matter. I conclude that under the terms of the deed of February 27th, 1878, the statute did execute the use, and that the title vested in Ann Eliza Drake. The plaintiff's seventh exception is sustained.

The next point to be considered is, does the rule in Shelley's Case apply in construing the limitation in the deed of February 27th, 1878, as contended by plaintiff's counsel. The limitation is to the heirs of her body. Under the trust deed the life estate and the estate in remainder are of the same quality. This rule applies to equitable as well as legal estates, when the trust is executed. It is a rule of law, unconnected with and independent of the donor's or grantor's intention. In *Williams* v. *Foster*, 3 Hill, 193, testator devised as follows: "I give and bequeath all that messuage or tenement, wherein I now live, to my grandson, C. B. W., to hold to him during his natural life, and after his death I give the same to his lawful heirs, to be equally divided." In delivering the opinion of the court, and in applying the rule in Shelley's Case, Chancellor Harper says: "There have been some cases where, after a life estate to the ancestor, the remainder has been limited to the heirs of his body, to be equally divided," or "to take, as tenants in common, and not as joint tenants, in which these qualifying words have been thought to indicate the donor's intention not to use the word 'heirs' in the technical sense, but to give to all children, as purchasers, whether heirs or not, according to the laws of England. But, on the clear preponderance of authority, I think it fully settled that even when

the limitation is to the 'heirs of the body,' the superadded words cannot have that effect."

The remaindermen under the trust deed of February 27th, 1878, are the children of the life tenant, and the grantor intended that said remaindermen should take by descent through their mother, the life tenant. I do not think that the superadded word "children," appearing in the deed, in connection with authority to the trustee to sell and reinvest at his discretion, could qualify the limitation to the heirs of her body, so as to exempt the deed of February 27th, 1878, from the operation of the rule in Shelley's Case. I conclude that the rule in Shelley's Case does apply to the trust deed of February 27th, 1878, and that under the said rule, Ann Eliza Drake took an estate in fee simple, and that the referee erred in holding that the children of Ann Eliza Drake, at her death, took under said deed an estate in remainder. To this extent plaintiff's exceptions are also sustained.

All of the exceptions to the referee's findings, as matter of fact, are hereby overruled, and to that extent the referee's report is confirmed. The referee's first (1) and fourth (4) conclusions, as matters of law, and the conclusion, as matter of law, that the complaint should be dismissed as to all of the defendants, are hereby overruled. Except as herein overruled or modified, the report of the referee herein, filed November 13th, 1889, is hereby confirmed and made the judgment of this court.

Having held that the fee simple estate was in Ann Eliza Drake when James F. Drake, as trustee, executed and delivered his bond and mortgage to plaintiffs, and that Ann Eliza Drake is estopped from denying the validity of said bond and mortgage to the extent of the balance reported to be be due on said bond by the referee, I conclude that plaintiffs are entitled to have the lots embraced in this mortgage sold under said mortgage to pay the balance as reported by the referee to be due upon the bond secured by said mortgage.

[Here follows order of sale.]

*Messrs. R. T. Caston* and *J. M. McQueen,* for appellants.

*Messrs. Johnson & Hursey,* contra.

May 12, 1892. The opinion of the court was delivered by

MR. JUSTICE POPE. The complaint exhibited in the Court of
Common Pleas for Chesterfield County by the plaintiffs against
the defendants, alleges that on the 9th day of October, 1883, the
defendant, James F. Drake, as trustee for his wife and children
(who are also defendants here), executed to the plaintiffs a bond
in the penalty of $1,600, conditioned to pay $800, twelve months
after its date, with interest from its date, at the rate of ten per
cent. per annum, and that to secure such bond said defendant,
as such trustee, at the same time executed a mortgage upon a
house and lot in the town of Cheraw, in this State; that only
$32.14 has been paid on said bond; that the bond and mortgage
before recited were executed in pursuance of an order in an ac-
tion, to which all the defendants were parties, whose object was
to empower such trustee to raise $800 for the benefit of his *ces-
tui que trust*, and to secure such amount by a mortgage of such
trust property; that the condition of said bond and mortgage has
been broken. Plaintiffs pray that the mortgage be foreclosed,
the premises sold, the proceeds of sale applied to the payment of
the bond, and that execution issue against the trustee for any
balance thereafter found due.

The answers contain, amongst others, the following allegations:
That James F. Drake, the trustee, on the 9th October, 1883,
borrowed only $650, instead of $800, to be used by him in busi-
ness in Wadesboro, North Carolina, and that plaintiffs knew full
well such purpose of the trustee at the time of their transactions
with the trustee; that the defendant, Mrs. Drake, was at that
time a married woman, and that such loan of money by the plain-
tiffs was not for the benefit of her separate estate; that the order
referred to in the complaint, as authorizing the borrowing of the
money and mortgaging her estate to secure the same, is null and
void; that at the date of such order her children were all minors,
except Mrs. Mary E. Hearn; that no guardian *ad litem* was
legally appointed to represent them, because not made parties as
required by law.

All the issues of law and fact were referred to Edward McIver,
Esq., as special referee. Testimony was taken for both sides.
By the report of such referee it was determined: 1. That on the

9th October, 1883, the defendants, Mrs. Drake and Mrs. Hearn, were adults; the remaining defendants were minors at that time, the last two being under 14 years of age.  2. That a copy of the petition asking that the trustee be given the right to borrow money and mortgage trust property to secure the same was not served on the infants, though a *subpœna ad respondendum* was probably served, and that no papers were served on the father, mother, or guardian of the infants in their behalf.  3. That the order of Judge Pressley, dated 4 October, 1883, was signed without the County of Chesterfield.  4. That the amount advanced under the mortgage was six hundred and fifty dollars.  5. That the payments were made out of the proceeds of the hotel business conducted by Mr. and Mrs. Drake jointly.  6. That the amount of four hundred and twenty-five dollars and thirty-one cents has been paid at the times and in the amounts stated by the witness, W. A. Carrigan, in his testimony.  7. That it was the understanding between Drake and the plaintiffs that the payments should go as a credit on the mortgage debt.  8. That the amount of $422.51 is due on the mortgage debt on the 15th November, 1889.

As conclusions of law the referee found: 1. That the statute has not executed the use under the terms of the deed of 27th February, 1878, but that the legal title remains in the trustee, James F. Drake, in trust for A. E. Drake during her natural life, and at her death in trust for her children.  2. That while a married woman has no authority to charge or encumber her separate estate held in trust, except in pursuance of the power given her in the instrument creating it, yet a Court of Equity has jurisdiction to authorize the trustee to encumber the estate, when it is for the interest of the estate so to do, even though the deed contains no such authority.  3. That the infant defendants, James F., jr., Henry, Lemuel, and Francis, were not properly before the court when the order of Judge Pressley, dated 4 October, 1883, was signed.  4. That the judge did not have jurisdiction to hear and determine this matter in any other than the county where the land is situated, it being a determination of the rights or interests in real estate.  5. That the complaint must be dismissed as to all the defendants.  6. That the pay-

ments made, amounting to $425.31, must be credited on the bond debt (being six hundred and fifty dollars) at the times and in the amounts made.    7. That the amount of $422.57 is due on the bond on the 15th November, 1889.

The plaintiffs duly excepted to this report.    The whole cause came on to be heard before Judge Witherspoon, who by his decree sustained all the findings of fact by the special referee, but reversed the 1st, 4th, and 5th conclusions of law of the special referee.    From this decree the plaintiffs do not appeal, but the defendants appeal upon eight grounds: I. His honor, the presiding judge, erred in holding that Judge Pressley had the right to hear and determine the petition of James F. Drake, trustee, at Bennettsville or Marion, "as same was not the determination of any right to or interest in land."    II. His honor erred in holding that the trustee, being authorized in his discretion to sell and reinvest the proceeds for the benefit of Mrs. Drake and her children, the court could not control the exercise of such discretion, and in therefore sustaining the mortgage to plaintiffs.    III. He erred in holding that under the trust deed to James F. Drake, the trust was executed under the statute.    IV. He erred in holding that there being no duty imposed on the trustee by said trust deed which the court could enforce, that the statute executed the use, and that title vested in Mrs. Drake.    V. He erred in holding that under the rule in Shelley's Case, the title in fee simple vested in Mrs. Drake, and that her children have no interest in the trust property.    VI. Having held that title to lands described in the complaint was in Mrs. Drake, she being a married woman, his honor erred in holding that said mortgage was binding upon her separate estate, there being no evidence that it was for its benefit, but it appearing, on the contrary, that it was for the benefit of said James F. Drake.    VII. He erred in holding that Mrs. Drake and Mrs. Hearn are estopped from denying the validity of said mortgage.    VIII. He erred in sustaining plaintiffs' seventh, ninth, and tenth exceptions to referee's report, in overruling the referee's first and fourth conclusions of law, and in not dismissing the plaintiffs' complaint.

The respondents present the following grounds of support to the decree of the Circuit Judge: I. Because the money obtained

on the mortgage in question was for the benefit of the *cestui que trust*, and therefore the trust estate is liable for its payment, and equity will subject said estate to such purpose. II. Because Mrs. A. E. Drake, the life tenant, had such an interest in the trust property for her natural life, under and by virtue of the trust deed, that a Court of Equity will subject such life estate to payment of debts contracted for the benefit of the trust estate and *cestui que trust*. III. Because a Court of Equity considers that done which ought to have been done, and will now subject the property to the payment of this debt which was expended for the benefit of the *cestuis que trust*. IV. Because the mortgage being given by the trustee and life tenant and an adult remainderman, will bind the life estate and the absolute estate in fee and remainder of Mary E. Hearn, they being estopped by their conduct from denying their estate therein, or repondents' right to their interest for the payment of this debt. V. Because the power to sell gives power to mortgage.

I. So far as the first ground of appeal relates to the infants, who, it is alleged in the complaint, were parties to the action heard by Judge Pressley in Marlboro or Marion Counties on the 4th October, 1883, we must express the view that the court was without jurisdiction. This court has repeatedly held that in order to make infants parties defendant to a cause, the requirements of the law in such cases must be complied with. It is not certain that any summons was served upon them in the cause that came on to be heard by Judge Pressley on 4th October, 1883. *It is certain* that the law was not complied with in the matter of the appointment of a guardian *ad litem* to represent them. No petition or other application for the appointment of such guardian *ad litem* was signed by those beyond fourteen years of age, nor does it appear that either the father or mother or guardian applied for such appointment for those under fourteen years of age. When the record on its face shows such irregularities, this court cannot hesitate as to its duty. *Tederall* v. *Bouknight*, 25 S. C., 275. "Jurisdiction of the person of an infant can only be acquired by pursuing the mode prescribed by statute." *Riker* v. *Vaughan*, 23 S. C., 187.

But by far the more serious question is presented as to the

adults who were parties to that action heard in October, 1883. If we were to admit that the court was without jurisdiction because held in a county different from that in which the land was situated, there would be the serious question that such adults had procured the loan of the money to be made by the plaintiffs here, by reason of their participation in such action. They should not be allowed afterwards to gainsay such action as to these plaintiffs. So, therefore, holding these views we will not consider the question as to the want of jurisdiction by Judge Pressley in passing the order in question. These adults are not entitled to raise it; they are estopped from denial thereof.

II. We will consider the second, third, and fourth grounds of appeal together. The language of the deed here referred to is: "To have and to hold all and singular the said premises before mentioned (the house and lot) unto the said James F. Drake, his heirs and assigns, in trust and confidence nevertheless for the use and benefit of his wife, the said Ann Eliza Drake, during her natural life, and at her death in trust for the heirs of her body, and at any time should the said James F. Drake, as trustee, deem it best for the interest of his said wife and children to sell said property and reinvest the proceeds, he is hereby empowered so to do." Now, does this use become executed under the statute? It has been repeatedly recognized by this court that the statute executes the use in all cases when nothing remains for the trustee to do. Or, as it is well stated by the special referee, Mr. Edward McIver, in his report: "A mere naked trust, when the trustee is only required to hold the legal title, is executed by the statute of uses; but whenever the trustee is charged with any duty to the estate which he cannot do unless the legal title remains in him, the statute does not apply. *Bristow* v. *McCall*, 16 S. C., 548; *Farr* v. *Gilreath*, 23 S. C., 512, and numerous cases there cited. Chancellor Harper, in *Posey* v. *Cook*, 1 Hill, 413, states the rule as follows: 'Perhaps the rule might be more accurately expressed to say that where the intention is that the estate shall not be executed in the *cestui que use*, and any object is to be effected by its remaining in the trustee, then it shall not be executed.' In this case, the trustee is authorized, when he deems best, to sell and reinvest; this he

manifestly could not do, unless the legal title remained in him."
We are entirely satisfied with the statement of the law as made
by the special referee.    We do not agree with the Circuit Judge
in so much of his decree as combats these views of the referee.
We will therefore sustain the second and third grounds of appeal
here.

III.: As to the fifth ground of appeal, which involves the ap-
plication to this deed of the rule in Shelley's Case.    By reading
the decree of the Circuit Judge, it will be seen that he
is led to recognize the legal effect of the words "heirs of
her body" in the deed by these considerations: 1. Hav-
ing already held that the statute had executed the use.    2. That
the use of the word "children" in the same paragraph of the deed
should have no influence in construing the particular clause of
the deed here in question.    There can be no doubt that the rule
of property, so long and familiarly known as the rule in Shelley's
Case, is still recognized in this State.    *McIntyre* v. *McIntyre*, 16
S. C., 293.    The underlying question in all controversies, when
it is contended that the rule in Shelley's Case applies, is, are the
words "heirs," "heirs of the body," or "issue," to be construed
as words of limitation or words of purchase?    If the former, the
rule of Shelley's Case applies, denying any estate to the "issue,"
"heirs of the body," but enlarging the estate of the life tenant to
a fee simple or fee conditional, as the case may be.    Such rule
does not apply to cases of unexecuted trusts, nor to cases where
the word "children" occur.    In the case at bar, we have just held
that the use was not executed by the statute, and therefore the
rule in Shelley's Case cannot apply here.    But if it were neces-
sary to do so, we would hold that the use of the word "children,"
in the same clause of the deed where the words "heirs of her
body" occur, would sufficiently indicate the purpose of the grant-
or in this deed to create a new stock of inheritance, and that
therefore the rule would not apply.    This view of the Circuit
Judge must be overruled.

IV. The appellants' sixth ground of appeal presents a trouble-
some question, for it involves the consideration anew of the
status of the separate estate of a married woman, as affect-
ed by her conduct in relation thereto.    This court has

not failed to recognize the decision of *Aultman & Taylor Co.* v. *Gibert*, 28 S. C., 303; but, on the other hand, it has resolutely set its seal to those of its decisions that held a married woman bound by her representations to others who have no knowledge to the contrary, that her dealings are made with reference to her separate estate, and with an intention on her part to bind such estate. There is no question but that the plaintiffs have advanced to her trustee the sum of $650 in cash, upon the faith of the pledge by such trustee of her interest in the house and lot belonging to her for life. No court should be expected or should suffer its judgments to impinge upon the requirements of honesty, fair dealing, and justice as between man and man, unless some rule of civil polity commands it. In the latter class of cases, the responsibility is not that of the court, but upon those who framed the organic and statutory law. In the case at bar, it was known to these plaintiffs what use the trustee would make of the money borrowed—that it would be employed in the venture of, not the purchase of a hotel, but the purchase of some hotel furniture and provisions. And, as might have been expected, the trust estate has been destroyed, as far as such use of it could do so. Now, who shall suffer—this patient wife, who, under our policy as well as our law, is submissive to the control of the husband, who at the same time is her trustee, or shall the partners, who are the plaintiffs here, and who knew what they were doing when they loaned the money they are now trying to recover? There must be a loss by some one of the opposing parties. Reluctantly, in this case, we sustain the exception of appellant.

V. As to the seventh ground of appeal, we regard it as disposed of by the decision by us of the preceding ground of appeal, so far as the liability of Mrs. Drake is concerned; but inasmuch as Mrs. Hearn, being under no disability at the time, not only acquiesced in the giving of the mortgage, but actually joined in the application for that purpose, we think she is estopped from disputing that her interest in the trust property is liable for the debt intended to be secured by the mortgage.

VI. As to the eighth ground of appeal. We cannot concur in the view of the appellants that the plaintiffs' complaint should be dismissed as to all the defendants, for we hold that the

6    plaintiffs are entitled to a judgment against the defendant, James F. Drake, as an individual, for the amount ascertained in the referee's report as still due and unpaid to the plaintiffs herein. And then, also, Mrs. Mary E. Hearn, so far as her share in the trust estate can do so, should be held liable to pay plaintiffs' claim, but her liability therefor should be limited to her share in such trust estate.

It is the judgment of this court, that the judgment of the Circuit Court be modified in accordance with the principles herein announced, and for that purpose the cause be remanded to the Circuit Court.