### SIMMS v. BUIST.

LIMITATION OF ESTATES—WILLS.—A devise to A for life, and upon her death "to go and vest in the heirs of her body, * * * in such shares as they would take as her representatives at law," vests a fee conditional in A. *Myers* v. *Anderson*, 1 Strob. Eq., 404; *McLure* v. *Young*, 3 Rich. Eq., 559; *McIntyre* v. *McIntyre*, 16 S. C., 290; *Fields* v. *Watson*, 23 S. C., 42; *Doe dem Gilman* v. *Elvey*, 4 East., 313, *distinguished from this.*

Before WATTS, J., Barnwell, April, 1898.      Reversed.

Action by Charles Carroll Simms *v.* H. F. Buist, for specific performance. Judgment for plaintiff. Defendant appeals.

*Mr. B. T. Rice,* for appellant, cites: 17 S. C., *Burnett* v. *Burnett;* 3 Rich. Eq., 559.

*Messrs. Patterson & Holman,* contra, cite: 1 Strob. Eq., 346; 3 Rich. Eq., 576; 16 S. C., 294; 23 S. C., 43; 42 S. C., 342; 2 S. C., 72.

July 5, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This was an action for the specific performance of a contract for the sale of land, and the only controversy between the parties is, as to whether the plaintiff is able to make a good and sufficient title to the land. The case was heard by his Honor, Judge Watts, upon an agreed statement of facts, a copy of which, together with a copy of the will of John Holly, through which plaintiff traces his title, is set out in the case. It seems that the land, which is the subject of the contract, was allotted to Mrs. E. A. Roundtree, a daughter of John Holly, under the fifth and sixth clauses of his will, and the controversy turns upon the proper construction of the sixth clause. It appears that Mrs. Roundtree, as well as her husband, John B. Roundtree, are still living, and that they

have had born unto them a daughter, who lived to the age
of twelve years and died.    Subsequent to the death of that
child the right, title, and interest of the said John B. Round-
tree in and to the land in question was sold under an ex-
ecution against him by the sheriff, and the plaintiff became
the purchaser, and received titles from the sheriff therefor.

The plaintiff, as we understand it, claims that, under a
proper construction of the will of John Holly, J. B. Round-
tree's wife, Mrs. E. A. Roundtree, is entitled to an estate
for her life in the land, with remainder to the heirs of her
body in fee; and that J. B. Roundtree, as the sole heir of
the only heir of the body of his wife, was entitled in fee to
a vested remainder in the land upon the termination of his
wife's life estate; and that the plaintiff, by his purchase at
sheriff's sale of the interest of John B. Roundtree, became the
owner in fee, after the termination of Mrs. E. A. Round-
tree's life estate; and that as the contract for the sale of the
land to the defendant was entered into "expressly subject
to the life estate of E. A. Roundtree," he is able to comply
with the terms of such contract, by making a good title in
fee, subject only to the life estate of Mrs. Roundtree, as pro-
vided for in the contract.

The defendant presents two questions, by way of objec-
tion to the title which plaintiff tenders.    1st.  Whether the
words "heirs of their bodies," as used in the sixth clause of
John Holly's will, are words of purchase or words of limit-
ation.    2d.  If used as words of purchase, are the remainder
to the "heirs of their bodies" vested or contingent.

It is stated in the decree of the Circuit Judge, that "The
defendant expressed his willingness to accept the title, if
the words 'heirs of their bodies,' as set forth in the sixth
clause of the last will and testament of John Holly, de-
ceased, were used in the sense of purchasers; and, if not, and
such words were used as words of limitation, then he is
unwilling to accept said title.    And the defendant further
contended that, if the words 'heirs of their bodies' are used
in the sense of words of purchase, and the heirs of the body

took directly under the will, then the estate was limited to them by way of contingent remainder." These two questions the Circuit Judge proceeded to consider, and held that the words "heirs of their bodies," as used in the will, were words of purchase and not words of limitation, and that the remainders were vested and not contingent; and he, therefore, rendered judgment requiring the contract to be performed.

From this judgment defendant appeals, raising the same questions as those stated above. There are other questions which might arise under contingencies not impossible in the eye of the law; but as no such questions were raised or considered in the Circuit Court, and are not presented by the exceptions, we do not propose to consider or suggest them, but will confine our attention to the questions presented by the record, having only alluded to the subject for the purpose of avoiding any inference that this Court has overlooked a possible aspect of the case.

The sixth clause of the will of John Holly, upon which the questions presented arise, reads as follows: "The land, stock, provisions, other personal property, choses in action or money, which may, under the provisions of this will, be allotted to my daughters and grand-daughters, are to be taken and held by Octavius B. Owens, his heirs, executors, administrators and assigns, forever, in trust for the sole and separate use of my said daughters and grand-daughters, respectively, for life, and, upon their respective deaths, to go and vest in the heirs of their bodies respectively, in such shares as they would take as their representatives at law, free and discharged of all further trusts and limitations." Inasmuch as there are no duties imposed upon the trustees, for the performance of which it would be necessary for the legal estate to remain in him, we agree with the Circuit Judge that the statute executed the use and carried the legal estate directly to the beneficiaries. We shall, therefore, consider the case as if the land in question were directly devised to Mrs. E. A. Roundtree for life, and upon her death

to go and vest in the heirs of her body, "in such shares as they would take as her representatives at law, free and discharged of all further trusts and limitations." By this language just quoted, we understand that the intention of the testator was that, upon the death of Mrs. Roundtree, the heirs of her body should take the same, in such shares as are prescribed by the statute of distribution, without any limitation over. This would not necessarily imply that such heirs would take share and share alike; for if the heirs of the body of Mrs. Roundtree happened to consist of grand-children as well as children, then they could not take share and share alike; for in such case each child would take an equal share, but the grand-children, if more than one, would take, amongst themselves, the share of the deceased parent. The material inquiry in this case is, what was the nature of the estate which Mrs. E. A. Roundtree took under the sixth clause of her father's will, by which, as we have interpreted that clause, the land in question was devised to her for life, and at her death "to go and vest in the heirs of her body," in such share as they would take under the provisions of the statute of distribution, without further limitation over. Did she take an estate in fee conditional, or did she take an estate for life only, with remainder to the "heirs of her body," or children, as the Circuit Judge interprets those words?

In *Whitworth* v. *Stuckey*, 1 Rich. Eq., 404, the testator devised lands to his son, "for and during his natural life; at his death, to the lawful issue of his body; and if he should die without lawful issue living at the time of his death," then over; and it was held that the limitation "to the lawful issue of his body," served only to enlarge the estate of the son to a fee conditional at common law, and did not create a remainder to the issue as purchasers. That eminent jurist, Harper, Ch., in delivering the opinion of the Court of Appeals in that case, used the following language: "There is no question but that, if there had been no more in the will than a gift to a son, 'for and during the term of

his natural life, and at his death to the lawful issue of his body,' this would have given an estate tail or fee conditional, under the rule in Shelly's case." He then proceeded to consider the question whether the limitation over affected the result, and held that it did not. That case is, it seems to us, conclusive of our present inquiry, unless the superadded words, which will be presently considered, should have the effect of changing the result; for, as said by Harper, Ch., in the case just cited: "The words *heirs of the body* and *issue*, are generally equivalent in a will, though the former are regarded as the stronger and more technical words." The superadded words, which, it is contended, take this case out of the rule in Shelly's case, are those which provide that the heirs of the body are to take, "in such shares as they would take as their representatives at law, free and discharged of all further trusts and limitations;" which, as we have seen, practically mean, that upon the death of Mrs. E. A. Roundtree, the heirs of her body would take the land in such shares as are prescribed by the statute of distributions, without any limitation over; but there are no words in the will, as it is written, or as its language has been interpreted by us, which would indicate either the quantity or quality of the estate which they are to take; for those words simply indicate *the proportions* in which they are to take, and do not show how the property so taken *is* to be held. Hence we do not think the cases relied upon to sustain the conclusion reached by the Circuit Judge are sufficient for that purpose.

In the case of *Myers* v. *Anderson*, 1 Strob. Eq., 344, testator gave to his son certain personal property for life, and after his death to his two daughters "during their natural lives," and after the death of said daughters, "to be the absolute property of the issue of their bodies forever," and it was held that the daughters took life estates only, with remainder to their issue as purchasers. Johnston, Ch., in delivering the opinion of the Court, uses this language: "All the authorities agree that if the limitation be to the heirs of

the body, or issue, *and to their heirs*, this constitutes them purchasers, as it shows an intention to give them an estate, not inheritable from the first taker, but an original estate, inheritable from themselves as a new stock of descent." He then proceeds to hold that the gift to the issue being not only of the property, but of the *absolute* property therein (a term importing the quantity of interest intended to be given), has as effectually given them the fee (so to speak) as if the bequest had been to the issue *and their heirs.* The learned Chancellor also gives utterance to a *dictum*, which is relied on in the case under consideration, expressed in the following language: "The authorities also agree that if the estate limited to heirs of the body or issue, be of a quality, or be given to be enjoyed in a way incompatible with the idea that they are to hold it in indefinite succession (as if it be given to them as tenants in common, or to be equally divided between them), this takes it out of the rule in Shelly's case, and the immediate heirs, or issue, take as purchasers." But as there was no provision in the will there under consideration, that the issue should take as tenants in common, or that the property should be equally divided amongst them, the last proposition quoted from the opinion of Chancellor Johnson, must be regarded as a mere *dictum*, not as authority, except such as may be derived from the weight of that able and learned Chancellor's opinion.

The next case relied on is *McLure* v. *Young*, 3 Rich. Eq., 559, which is a decision of the former Court of Errors. In that case the testator devised real property to his daughter, "for and during the term of her natural life, and at her death, I give, bequeath, and devise the same, absolutely and forever, to her lineal descendants; and in case she should die without lineal descendants (one or more) living at the time of her death, then it is my will that the whole of said real estate revert to my estate, and be disposed of as hereinafter directed." The decree of Johnson, Ch., on Circuit was that the daughter took a fee conditional, but the Court of Errors reversed that decree, holding that the daughter took a life

estate, with remainder to her lineal descendants as purchasers. The Court based its conclusion upon the fact that, upon the termination of the daughter's life estate, the property was given "*absolutely and forever*" to her "*lineal descendants*," importing the same thing as "issue" or "heirs of the body," which showed that the intention of the testator was that the lineal descendants of the daughter should take—*not* in indefinite succession from her—but that the estates which they took should be *absolute* and should exist *forever*—that is, in fee simple, which would be equivalent to a devise to the lineal descendants *and their heirs;* and hence, under the case of *Myers* v. *Anderson, supra,* they would become a new stock of inheritance; and this would take the case out of the rule in Shelly's case. In this way the case was distinguished from *Whitworth* v. *Stuckey, supra*—the authority of which was not denied.

The next case relied on is *McIntyre* v. *McIntyre*, 16 S. C., 290. In that case, lands were devised to A for life, and after her death to be equally divided amongst testator's children *nominatim*, to be held by them for life, and after their death, "to the issue of them *and their heirs forever.*" *Held,* that the children of A took life estates only, with remainder in fee to their issue as *purchasers.* That conclusion was based upon the authority of *Myers* v. *Anderson, supra,* and *McLure* v. *Young, supra,* and other cases therein cited, holding that where there are any words in the limitation over indicating that the intention was to create a new stock of inheritance in the issue, such words would take the case out of the operation of the rule in Shelly's case, and the issue would take as purchasers. In the case of McIntyre *v.* McIntyre, the words superadded to the limitation to the issue, to them "*and their heirs forever,*" conclusively show an intention to create a new stock of inheritance; and hence, under the rule laid down in Myers *v.* Anderson, and folfowed in McLure *v.* Young, took the case out of the operation of the rule in Shelly's case.

The case of *Fields* v. *Watson*, 23 S. C., 42, has also been

relied on, but as the Court was much divided in that case, it can scarcely be regarded as settling any particular proposition of law, and can only be regarded as the law of that particular case. It is true, however, that the late Mr. Justice McGowan, in his separate opinion, does quote with approval the *dictum* first found in *Myers* v. *Anderson*, and also repeated in *McLure* v. *Young*, that where the estate, limited to the heirs of the body or issue, is to be held by them as tenants in common, or to be equally divided between them, this takes it out of the rule in Shelly's case, and the immediate heirs or issue take as purchasers; and it is also true that the late Chief Justice Simpson does say, in his separate opinion, that the view presented by McGowan, A. J., is supported by the authorities cited by him; but in the separate opinion of the other Associate Justice, it is shown than no such proposition was either raised or decided in any of the cases cited. Subsequent examination, in reference to the present case, only serves to confirm the opinion there expressed, and has also disclosed the case of *Williams* v. *Foster*, 3 Hill, 193, in which it was expressly held, that under a devise to C, "to hold to him during his natural life, and after his death, I give the same to his lawful heirs, *to be equally divided*," the rule in Shelly's case applied, and that the superadded words, "to be equally divided," did not take the case out of the rule. It is quite true, that the limitation in that case was to "heirs," and not to "heirs of the body;" but that circumstance manifestly was not regarded as making any difference, for Harper, Ch., in delivering the opinion of the Court, uses this language: "But on the clear preponderance of authority, I think it fully settled that, even where the limitation is to the 'heirs of the body,' the superadded words cannot have that effect"—that is, cannot have the effect of taking the case out of the operation of the rule in Shelly's case. From a somewhat extended, though we do not pretend to claim exhaustive, examination of the subject, it seems to us that the notion, that where the estate limited to the heirs of the body, or

issue, is given to them as tenants in common, or to be equally divided between them, the rule in Shelly's case will not apply, is based upon the case of *Doe ex dem Gilman* v. *Elvey*, 4 East., 313, where the devise was to the testator's son, "and to the issue of his body lawfully begotten, or to be begotten, *his, her or their heirs*, equally to be divided, if more than one," with a limitation over in case the son should die leaving no issue living at the time of his death. Harper, Ch., in speaking of that case, in *Whitworth* v. *Stuckey*, *supra*, says: "Lord Ellenborough, all the other Judges concurring, expressed the opinion that the issue took as tenants in common—that is, by purchase—on the effects of the words, 'equally to be divided between them,' and the limitation to 'his, her or their heirs.' " It will be observed that this opinion was based, not alone upon the words, "equally to be divided between them," but upon those words, *and* the limitation *to his, her or their heirs.* So that even that case is not authority for the proposition that a provision for equal division *alone* will justify the Court in construing the words, "heirs of the body," or "issue," as words of purchase, the other words, "to his, her or their heirs," being, as we have seen, amply sufficient to justify such a construction. The following cases show that, even in England, the provision that the heirs of the body, or issue, shall take as tenants in common, or the provision for an equal division amongst them are not always sufficient to require the words, heirs of the body, or issue, to be construed as purchasers. *Doe dem Chandler* v. *Smith*, 7 T. R., 527; *Pierson* v. *Vickers*, 5 East., 548; *Bennett* v. *Earl of Tankerville*, 19 Ves., 170. But if that must be regarded as the rule in England, where the eldest son is the sole heir, the reason of the rule ceases here, since the right of primogeniture has been abolished. It seems to us, therefore, that the superadded words relied upon here to take this case out of the operation of the rule in Shelly's case, are not sufficient for that purpose; and that, under that rule, which, as said by Harper, Ch., in *Williams* v. *Foster*, *supra*, "has

been an admitted and established rule of law for centuries, and the wisdom of which is more approved as it is better understood."  Mrs. E. A. Roundtree takes an estate in fee conditional, and not an estate for life, with remainder to the heirs of her body as purchasers.  It is true, that this celebrated rule often operates to defeat the intention of the testator, but it has been so long and so well settled, as to become a "rule of property," which a Court is not justified in disregarding in a case to which it properly applies.

Under this view, it becomes unnecessary to consider the second question, as to what would be the nature of the remainder, whether vested or contingent; for if, as we have concluded, there is no remainder, the question, what would be its nature, if there was one, becomes a purely speculative question.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the complaint dismissed.