## MATTISON v. MATTISON.

DEEDS—FEE CONDITIONAL—LIMITATION OF ESTATES.—Deed conveying land to M., in the *habendum,* "to have and to hold all * * * unto the said M., and the heirs of his body lawfully begotten during his or their life or lives, and should he and his heirs as aforesaid become extinct, then the estate aforesaid to revert to my lawful heirs," carries a fee conditional to M. Some principles of construction of fees conditional stated.

Before GAGE, J., Anderson, April, 1902.    Reversed.

Action by Elip Mattison against Milton Mattison.    From Circuit decree, defendant appeals.

*Messrs. Tribble & Prince,* for appellant.    *Mr. Tribble cites:* 10 S. C., 354; 23 S. C., 232; 3 Hill, 194; 52 S. C., 245; 28 S. C., 238; 47 S. C., 288; 52 S. C., 554; 48 S. C., 440; 2 McC. Ch., 323; Bail. Eq., 383; 5 Reid S., 605; 2 Strob., 101; 5 Rich. Eq., 358; 17 S. C., 522; 57 S. C., 173; 56 S. C., 550.

*Messrs. Bonham & Watkins,* contra, cite: 36 L. R. A., 186; 2 Jar. on Wills, 37; 16 S. C., 303; 1 Bay, 457; 1 Strob., 132; 1 Strob. Eq., 344; 1 Rich. Eq., 143; 3 Rich. Eq., 550; 10 S. C., 365; 16 S. C., 290; 28 S. C., 486; 27 S. C., 479; 23 S. C., 42, 238; 10 S. C., 56; 16 S. C., 303; 42 S. C., 346; 3 Strob. Eq., 66; 3 Rich. Eq., 15; 36 S. C., 38.

March 24, 1903.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    At the March term, 1902, at Anderson, S. C., a cause without action upon an agreed statement of facts was submitted to his Honor, Judge Gage, under sec. 374 of the Code of Procedure.    The following was the agreed statement of facts: "On the 2d day of February, 1886, W. P. and N. C. Mattison executed a mortgage to H. I. Epting on the tract of land, containing eighty-six

acres, more or less, situated in Anderson County, on waters
of Saluda River, bounded by lands of Joel Kay, M. Smith,
H. Austin and others.    Mortgage was duly recorded in book
25, page 389, and does not make any reference to the source
of title.    On January 11th, 1888, H. I. Epting brought suit
to foreclose said mortgage, and on October 26, 1888, judg-
ment of foreclosure was entered and sale ordered, and in pur-
suance thereof the land was bid off by R. T. Chamblee,
who transferred his bid to J. R. Vandiver and J. L.
Tribble, and the sale was confirmed by order of the Court,
bearing date June 28, 1889.    The purchasers entered into
possession of the same.    Subsequently, J. R. Vandiver
transferred his interest to J. L. Tribble, who became sole
owner under deed from the master, and afterwards he con-
veyed said land to the defendant, Milton Mattison, who is
now in possession of it.    The plaintiff, Elip Mattison, sets
up title to the land in possession of the defendant, basing his
right thereto under a deed from Wyatt Mattison, bearing
date September 5th, 1871, of which the following is a copy:
'State of South Carolina.    Know all men by these presents,
That I, Wyatt Mattison, of Anderson County, in the State of
South Carolina, in consideration of natural love for my son,
Wm. P. Mattison, of Anderson County, in the State afore-
said, do hereby deed and give to my said son all that land
now owned by me, on the east side of the public road leading
from Calhoun in said county, to Irwin's mill which boundary
contains 87 acres, more or less.    The courses and distances
of which land will be found in the title of Nimrod Smith to
James Mattison, dated 1803, and title to Nancy . Leech,
dated 1863, and title of Geer and Jane Kay, dated since 1865,
for twenty-six acres, lost title.    Together with all and singu-
lar the rights members hereditaments and appurtenances to
the said premises belonging or in anywise incident or apper-
taining.    To have and to hold all and singular the said
premises unto the said William P. Mattison and the heirs of
his body lawfully begotten, during his or their life or lives
and should he and his heirs as aforesaid become extinct then

the estate aforesaid to revert to my lawful heirs. Provided always nevertheless that Caroline the wife of my said son be allowed a support out of said land during her natural life.' The warranty clause is to the said Wm. P. Mattison and his lawful heirs. It is admitted that Wm. P. Mattison and his wife, Caroline, are both dead, and the plaintiff, Elip Mattison, is the only lawful heir of the body of the said Wm. P. Mattison, and was *in esse* at the date of the execution of the deed. This deed was duly recorded in book LL, page 394. That the land described in this deed is the same land mortgaged to H. I. Epting and sold under foreclosure as above stated, after the birth of issue to Wm. O. Mattison lawfully begotten. In pursuance to sec. 374 of the Code of Procedure, the foregoing facts are agreed upon and are presented to the Court for a determination of the rights of the parties to the land in controversy."

The decree of the Circuit Judge was as follows:

"This is a controversy without action. The controversy is about eighty-six acres of land. Both parties claim from a common source, and that is one Wyatt Mattison. The issue of law is about the construction of a deed made in September, 1871, by Wyatt Mattison to his son, Wm. P. Mattison. The son, Wm. P., alienated the land by mortgage, and defendant claims title thereunder. The plaintiff is the only child and heir of William P. He claims the land by purchase under the deed of Wyatt, above referred to.

"The deed was manifestly drawn by one not familiar with legal phraseology, and the words of doubtful meaning are those which have so often been the subject of judicial discussion. 'Heirs of his body lawfully begotten.' The deed in issue in the granting clause reads thus: 'In consideration of natural love for my son, William P. Mattison, * * * do hereby deed and give to my said son, all that land,' etc. The habendum clause is in this language: 'To have and to hold all and singular the said premises * * * Unto the said William P. Mattison and the heirs of his body lawfully begotten.' 'During his or their life or lives'—'And should he and

his heirs as aforesaid become extinct then the estate shall revert to my lawful heirs.' (The breaks are my own.)

"Next following is a proviso in this language, 'provided, nevertheless, that Caroline, the wife of my said son, be allowed a support out of the said land during her natural life.' The warranty clause is to the said William P. Mattison and his lawfully begotten heirs. The object of all construction is the ascertainment of the intent of the maker of the deed. That is sometimes impossible, on account of the use by the maker of words which mean one thing to him and another thing to the expounder. If, however, in the whole paper the intent of the maker is manifest, it should be carried out, unless violence be thereby done to the rules of law.

"When the deed in issue was made, William P. had one child, the plaintiff, Elip Mattison. The contention of the defendant is that the deed to 'William P. Mattison and the heirs of his body' created in William P. a fee conditional. If there were no other words in the deed, that contention would be manifestly correct. The words 'During *his or their life or lives,* and should he and *his heirs* as aforesaid become extinct, then,' etc., modify the language first quoted. I apprehend the maker, Wyatt Mattison, intended to say: I give this 86 acres to my son, Wm. P., and his children to enjoy during their lives, and if Wm. P. should die, and if Wm. P.'s children should die without leaving children, then the land shall go to the heirs at law of Wm. P. The intent of Wyatt was that the land should be enjoyed by his lineal descendants as long as the strain held out. He gave no consideration to the technical thing known as *title.* The granting clause gives to Wm. P. a life estate, though in not so many words. The habendum clause runs to Wm. P. during his life, and to the heirs of his body during their lives, and in the event of his death and the death of his heirs aforesaid, then over. It seems plain to me, the *intent* was that Wm. P. and his children should have the land; or, in legal parlance, 'heirs of his body' was employed not to denote

the character of Wm. P.'s title, but to describe another beneficiary, to wit: children of Wm. P.    I do not think this view is antagonistic to the decision in *Sims* v. *Buist,* 52 S. C., 559, or to *Ex parte Yown,* 17 S. C., 533.    It seems to me to accord with *Simmons* v. *Bryce,* 10 S. C., 365, and *McCown* v. *King,* 23 S. C., 238.

"The inquiry here is not who owns the fee but who has the better title of the parties to this controversy?    Defendant has none.    Plaintiff has at least a life estate; to hold he had a larger title, would be useless, for it would bind nobody.    I am of the opinion, therefore, the plaintiff is entitled to recover of the defendant possession of the lands described in the submission, and it is so ordered."

The appellant appealed on the following exceptions:

"1. Because his Honor erred in his construction of the deed in controversy, made by Wyatt Mattison to William P. Mattison, September, 1871, under which plaintiff claims title to the land in dispute; whereas, his Honor should have held that said deed conveyed a fee conditional to said William P. Mattison, and that the mortgage executed by him, and the judgment of foreclosure and sale thereunder by the master, under which defendant claims, barred the plaintiff as sole heir of the body of W. P. Mattison from a recovery of said tract of land.

"2. Because his Honor erred in holding that the subsequent words in the habendum clause operated to cut down the fee conditional, previously conveyed, to a life estate in William P. Mattison; whereas, he should have held that the grantor could not cut down the fee to a life estate in the same clause, as the clause, *'during his or their life or lives,'* is wholly repugnant to the previous clause—'To have and to hold all and singular the said premises unto the said William P. Mattison and the heirs of his body lawfully begotten;' and since one contradicts the other, the rule of construction requires that the fee first granted shall not be cut down to a life estate.

"3. Because the presiding Judge, in order to make the

deed conform to his own idea of what the grantor intended, had to supply words and entire sentences, not found in the deed, thereby making a new contract for the parties after both the grantor and grantee are dead; the error complained of consists in the following language of the presiding Judge, which he substitutes for the words of the deed, to wit: 'I apprehend the maker, Wyatt Mattison, intended to say this: I give these 86 acres to my son, William P., and his children to enjoy during their lives, and if William P. should die, and if William P.'s children should die without leaving children, then the land shall go to the heirs at law of William P. The intent of Wyatt was that the land should be enjoyed by his legal descendants so long as the strain held out.' If the foregoing be the true construction of the deed, then the fee to said land was in said William P., otherwise it could not possibly go to the heirs at law of William P. upon the death of his lineal descendants; and, therefore, his Honor erred in supplying whole sentences to said deed, the effect of which is either to mount a fee upon a fee in a deed by way of executory devise, or else to create a life estate beyond a life in being or twenty-one years and nine months.

"4. Because the well settled rule of law in the construction of deeds is, that the intention of the grantor is to be obtained from his own words, and not from words supplied *de hors* the instrument, that the habendum clause of a deed may enlarge the estate previously granted, but cannot cut the estate already granted down to a lesser estate; that the subsequent words, 'during his or their life or lives,' are wholly inconsistent with and repugnant to the previous estate granted to 'William P. Mattison and the heirs of his body lawfully begotten,' and his Honor erred in not so holding.

"5. Because the superadded words, 'and should he and his heirs as aforesaid become extinct, then the estate shall revert to my lawful heirs,' donate an indefinite failure of lineal succession of 'heirs of the body,' and the words 'heirs as aforesaid' can have reference only to the previous words in the same clause, to wit: 'heirs of the body lawfully begotten,'

which is the appropriate term to create a fee conditional, and shows that the grantor, Wyatt Mattison, intended to part with the fee, and that there would be no reversion except upon extinction of 'heirs of the body of Wm. P. Mattison,' and his Honor erred in not so holding.

"6. Because the said William P. Mattison, being the son of Wyatt, it is immaterial whether there was a money consideration or not; and if it be a fact that plaintiff was born when the deed was executed, it is immaterial; that the grantor did not make the children of William P. the object of his affections, is manifest from the deed itself; and since ·the grantor used the expression, 'heirs of the body lawfully begotten,' unless there is· something in the *context* of the deed *itself* to show that he did not use said words according to their well defined meaning, then it is to be presumed that the grantor used them in that sense, and his Honor erred in not so holding.

"7. Because, while the Court has power to transpose words or sentences, in cases of ambiguity, to ascertain the true meaning of a deed or other written instrument, yet, it is submitted that the Courts do not sit to make contracts for parties, but to interpret the contracts submitted from the language used by the grantor; and where technical terms are used by the parties, the Courts presume that they are used in their technical sense, unless the deed itself shows to the contrary; that there are no words in said deed to show that the grantor did not use the words 'heirs of the body,' in their legal sense, as in *Simmons* v. *Brice,* 10 S. C., 365; *McCown* v. *King,* 23 S. C., 238; and his Honor erred in holding that the deed comes within the terms of those cases, when the super-added words there showed that the words were not used in their technical sense.

"8. Because his Honor erred in holding that plaintiff could take under the habendum clause in said deed to William P. Mattison and the heirs of his body, when he is not named in either the granting clause nor in the habendum clause; that if plaintiff takes at all under said deed, he can

take only as a lineal descendant of William P., as there are no words showing that the plaintiff was to take as a new stock of inheritance."

We will now endeavor to construe this deed, and in doing so will avoid naming the terms of the exceptions; for, as we view it, the appellant seeks to have the deed in question so construed that by its terms an estate as a fee conditional was therein granted unto William P. Mattison. We think it necessary to have the deed in its entirety spread before us; but before doing this, we think it advisable to make a statement of the facts underlying this contention. In the year 1871, one Wyatt Mattison, of Anderson County, in this State, by his deed conveyed to his son, William P. Mattison, 86 acres of land. At that time the said William P. Mattison was a married man, and his wife, Mrs. N. C. Mattison, bore him one child, the plaintiff, Elip Mattison. William P. Mattison went into possession of said land, and in about 1886, he, with his wife, Mrs. N. C. Mattison, mortgaged this land by deed to H. I. Epting. The debt secured by the mortgage not having been paid, the said H. I. Epting brought his action to foreclose said mortgage, and in the year 1888, under a decree for foreclosure, the master sold the land, the purchase price was paid and the sale was confirmed by the Court, and the purchaser at such sale went into possession. The defendant has a deed from such purchaser and now occupies the land. The said William P. Mattison and his wife, N. C. Mattison, thereafter died. The plaintiff, Elip Mattison, was the only child born to said William P. Mattison and N. C., his wife, being *in esse* in 1871. He now sues to recover the land under the deed of his grandfather, Wyatt Mattison, to his father, William P. Mattison, in the year 1871. The defendant claims also under said deed of 1871. If the estate created under the deed of date 1871 to Wm. P. Mattison was a fee conditional, the defendant succeeds in his defense. If it was not a fee conditional, the plaintiff recovers the land in dispute. So that the rights of the parties to this action depend upon the construction of

the deed made in 1871. The following is a true copy of the deed: "Know all men by these presents, That I, Wyatt Mattison of Anderson County in the State of South Carolina in consideration of natural love for my son, Wm. P. Mattison of Anderson County, in the State aforesaid, do hereby deed and give to my said son all that land now owned by me on the East side of the Public Road leading from Calhoun in said County to Irwin Mill, which boundary contains 87 acres more or less. The courses and distances of which land will be found in the title of Nimrod Smith to James Mattison dated 1803 and title of Nancy Leech dated 1863 and title of Green and Jane Kay dated since 1865 for twenty six acres, lost title. Together with all and singular the rights members hereditaments and appurtenances to the said premises belonging or in anywise incident or appertaining. To have and to hold all and singular the said premises unto the said William P. Mattison and the heirs of his body lawfully begotten during his or their life or lives and should he and his heirs as aforesaid become extinct then the estate aforesaid to revert to my lawful heirs. Provided always nevertheless that Caroline, the wife of my said son, be allowed a support out of said land during her natural life. The warranty clause is to the said Wm. P. Mattison and his lawful heirs."

It will be observed that in the *premises* of the deed, the son, William P. Mattison, is the only person named as the grantor, and the consideration of said deed is the natural love borne by the grantor to the grantee, the said Wm. P. Mattison. Under our decisions as to the true construction of deeds, if the grantor had stopped with the premises, William P. Mattison would have only had a life estate in said lands, the fee would have remained in the grantor, Wyatt Mattison. But the grantor did not stop here, for in habendum clause of said deed he provided, "To have and to hold the said premises unto the said William P. Mattison and the heirs of his body lawfully begotten." If the deed had stopped just here, the defendant would have had no

23—65

trouble, for William P. Mattison, after issue born to him in lawful wedlock and during the lifetime of said issue, had conveyed the land in question to the defendant. But the grantor did not stop in the habendum clause with the words we have just quoted, but he went on as follows: "during his or their life or lives, and should he and his *heirs as aforesaid* become extinct then the estate aforesaid to revert to my lawful heirs——" One peculiarity of the fee conditional at common law is that if the grantor and the heirs of his body lawfully begotten die, the estate reverts to the grantor; provided, of course, the grantor has not alienated said lands after the birth of heirs to his body. Is this not the very thing the grantor has provided for? Has he not attempted to put into expression in this deed what the law would have done for him in their absence? He uses the words, "his heirs *as aforesaid*"—that is, "heirs of his body lawfully begotten." Instead, therefore, of saying that this deed is inartificially drawn, it seems to us that the draftsman knew all about the law governing fees conditional at the common law. But apart from this, the cases of *Whitworth* v. *Stuckey,* 1 Rich. Eq., 404; *Hull* v. *Hull,* 2 Strob. Eq., 190; *Bethea* v. *Bethea,* 48 S. C., 440, 26 S. E., 716; *Simms* v. *Buist,* 52 S. C., 554, 30 S. E., 400; *Miller* v. *Graham,* 47 S. C., 288, 25 S. E., 165 (which is very of kin to the present case), and many other cases show that a deed wherein a conveyance is even made as a fee conditional, cannot by words subsequently added in the same deed, destroy such fee conditional. If the views of the Circuit Judge should prevail, it seems to us a perpetuity would be created, for how could the "strain" be preserved without doing so? One construction which has been mentioned would be to mount a fee upon a fee, which cannot be done. Other difficulties could be disposed of, but we see no necessity to pursue the question any further. The exceptions are well taken. The Circuit decree must be reversed.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the action be remanded to

the Circuit Court in order that a decree may be pronounced dismissing the plaintiff's complaint.

MR. JUSTICE JONES *concurs in the result.*

MR. JUSTICE GARY *concurring.* The habendum clause of the deed is as follows: "To have and to hold all and singular· the said premises unto the said Wm. P. Mattison and the heirs of his body lawfully begotten during his or their life or lives, and should he and his heirs as aforesaid become extinct, then the estate aforesaid to revert to my lawful heirs. Provided, always nevertheless, that Caroline the wife of my said son be allowed a support out of the said· land during her natural life." The deed is very inartistically drawn, and it is impossible to place upon it such a construction as will give force and effect to all its provisions. The words "should he and his heirs as aforesaid become extinct then the estate aforesaid to revert to my lawful heirs," clearly show that it was the intention of the grantor to dispose of the fee in the land. Effect can be given to this intention by constring the words "heirs of his body lawfullw begotten," to create a fee conditional; while, on the other hand, if they are construed as the equivalent of "children," this intention will be defeated; as "children" is a word of purchase and not of limitation—*Bannister* v. *Bull,* 16 S. C., 220; and there are no other words in the deed appropriate to the conveyance of the fee.

In his opinion, Mr. Chief Justice Pope says: "If the views of the Circuit Judge should prevail, it seems to us that a perpetuity would be created; for how could the 'strain' be preserved without doing so?" Section 2464 of the Code of 1902 provides that such words shall not be construed to mean an indefinite failure of issue, but a failure at the time ·of the death of such person. This, however, is an immaterial question in this case.

I, therefore, concur in the conclusion announced in the opinion of Mr. Chief Justice Pope.