HUNT v. NOLEN.

1. TRUST DEED—CASE FOLLOWED.—Lands were conveyed by deed to trustee for the use of D. during her natural life, and after her death to the use of her husband, if he survived, during his natural life, and at his death to be equally divided among the children of D. After again stating the life estates substantially as above, adds these words, "then to go absolutely to the children of the said D. absolutely, share and share alike." *Held*, that the children of D. took a fee in the land—following *Fuller* v. *Missroon*, 35 S. C., 314.

2. DEED—BREACH OF WARRANTY.—A deed conveyed 200 acres within certain metes and bounds. Upon survey, it appears that to get the 200 acres within said boundaries would include a tract held under a paramount outstanding title. *Held*, that there was a defect in the title, constituting a breach of the warranty.

3. BREACH OF WARRANTY—DAMAGES FOR.—On a breach of warranty for defective acreage, the amount of damages is the value of the land, with interest from date of delivery of deed.

Before ALDRICH, J., Spartanburg, April, 1895. Reversed.

This was an action in foreclosure commenced January 21, 1891, by Amanda C. Hunt and Marie Hunt against W. R. Nolen. The case went to the Supreme Court (*Hunt* v. *Nolen*, 40 S. C., 284), which ordered that J. P. Cleveland should be made a party defendant, and the case now comes up in that condition, both parties appealing. The following is so much of the decree of Judge Aldrich as pertains to the construction of the trust deed, which is the principal point in the case:

I will next consider the aforesaid deed of H. H. Thomson to Dr. Wm. C. Bennett, trustee, dated February 21st, 1853. Cleveland and Nolen submit that this deed conveyed the fee simple title in the premises to the children of Cynthia Dupreest, and plaintiffs submit that said deed conveyed to said children only a life estate This is an important issue; because, if only the life estate was conveyed, then, upon the falling in or termination of such life estate, the land would revert to H. H. Thomson or his assigns, and by such assigns held in fee simple. Nolen being the grantee or assign of H. H. Thomson, is entitled to the remainder, in fee simple, upon the falling in of the life estate or estates, if the children of Cynthia Dupreest took such an estate in the premises. Judge Fraser held that said deed conveyed a life estate to the said children. It will be noted that Cleveland's title, if for life, is not for his life but for the lives of the children of Cynthia Dupreest. In the language of the common law, quoting from the old writers, he would be called "tenant *per autre vie,*" which, says Blackstone, is the lowest species of freehold. 2 Bl. Com., 120.

In 1853, H. H. Thomson conveyed the land now called the Cleveland to "Wm. C. Bennett, as trustee of Mrs. Cynthia Dupreest, to have and to hold said land to the said Dr. Wm. C. Bennett, as trustee, in trust always and for the uses and purposes hereinafter expressed and declared." That is to say, in trust for the use, behoof, and benefit of Mrs. Cynthia Dupreest, for and during the term of her natural life, to permit her, at her pleasure, to use the same, enjoy the

rents, &c., "during the term of her natural life, and at her death to be held in trust for the benefit of her husband, James Dupreest, during his natural life" * * * "and at his death to be equally divided amongst all the children of the said Cynthia Dupreest." This is but a brief synopsis of the deed, and to fully understand the issues, said deed should be read carefully.

Defendant, in support of their construction of the deed that it conveyed the fee simple, refer to: 1. The consideration. 2. The word "always" after the grant to the trustee. 3. The word "absolutely," twice used in the latter part of the deed.

1. The consideration $500 proves nothing. Defendant contends, upon the evidence, that this was the full value of the land in 1853. I do not think so, but assume such to be the fact, and it amounts to nothing. The absolute and uncontrolled use of the land by Mrs. Dupreest for her life, then by her husband for his natural life, should he survive her—then, at his death, or the death of the survivor, to the children of Mrs. Dupreest, seven in number, for their lives, falls but little short of the fee simple therein, if we view these estates as they appeared over forty years ago. It is always a question, where the land produces an income or contains a good dwelling upon it, whether it is better for a widow, entitled to dower, to take the land for her life or one-half of its value in money to her and her heirs, one-third for life or one-sixth in fee. Let the term of enjoyment of an entire tract be extended to the life of her husband, and it will be much preferable to one-half of it in fee to the use of a large family of children as long as they may live, and such enjoyment and use will fall little short of being as valuable as the fee therein. If the use for one life is worth half the fee, the use for two lives is worth more, and the use for nine lives, seven being "children," is worth very little less than the fee. I conclude, and so hold, that $500 was no more than the value of the life estate conveyed in said deed. If this is true, the consideration

proves nothing as to the intention of the grantor. It cannot be contended that the mere fact of there being a consideration named in the deed, even a full one, can alone enlarge the estate to prevent a reversion. If this were so, the estate would have to be enlarged, even where the estate conveyed was expressly limited to a life estate. The expressions used in the cases upon this subject, in my opinion, mean that where a deed is doubtful, and there are other clear evidences in it of an intent, on the part of the grantor, to convey the fee, then the considerations may be regarded along with such other evidences in ascertaining the intent of the grantor. But the consideration alone cannot and does not furnish proof of intent.

2. The word "always," "to have and to hold   *   *   * to the said Dr. Wm. C. Bennett, as trustee, in trust always, and for the uses and purposes hereinafter expressed and declared." If perpetuity was intended, why was not "always" put after "Bennett," and so that it would read, "to the said Dr. Wm. C. Bennett always, as trustee, in trust," &c. Instead, it is to "Bennett." Not to "Bennett and his heirs" nor "forever," and not even "always;" but simply to "Bennett, as trustee, in trust always." This is equivalent to saying to "Bennett, as trustee, always in trust," so long as he held; and not that he should hold it always, and such holding should be in trust. This is what the expression means, according to the language and punctuations of the grantor. Again, the language is, "in trust always, and for the uses and purposes hereinafter expressed and declared," which means in trust for those uses. Thus the grantor expresses and declares those "uses and purposes in exact and explicit language," and no word of perpetuity is found therein. There is nothing in the declarations of the trust to show that the trustee was to hold "always," but much to show that his holding was to be, and intended to be, temporary, so long as Mr. and Mrs. Dupreest should live. If "always" was intended to mean perpetual holding of the trustee by him and his heirs, why did the grantor,

in declaring the trust, limit the trustee holding to the lives of Mr. and Mrs. Dupreest, and convey the premises upon their death directly to the children of the said Cynthia Dupreest," and why, in repeating his purpose, did the grantor say, "then to go absolutely to the children?" No one contends, nor can it be contended, that the grantor intended to continue the trustee's holding during the estate of the children, and on forever. I hold that this word "always" does not, nor was it intended to, create an estate in perpetuity.

3. The word "absolutely." It will be noted how careful the grantor was to declare the trust and his purposes, to limit the power of the trustee, and to limit the trust to the "natural" lives of Mr. and Mrs. Dupreest and the survivor. Not satisfied with expressing it once, he directs it several times, at least on four several and separate occasions; and then the grantor provides that, upon the death of Mr. and Mrs. Dupreest, the land is "to be equally divided amongst all the children of the said Cynthia Dupreest." This was sufficient, but the grantor again refers to the estate of Cynthia Dupreest, the party whose money paid for the conveyance, and whose welfare seems to be, and doubtless was, the thought uppermost in the grantor's mind; and after restating his intentions and purposes in her behalf, the grantor ends his deed as follows: "The said Dr. Wm. C. Bennett, as trustee [the "interest always" in her omitted], to have and to hold the said premises in trust during the term of the joint lives of the said Cynthia Dupreest and James Dupreest, during their natural lives, then to go absolutely to the children of the said Cynthia Dupreest absolutely, share and share alike." Having repeated the trust so often, it is not strange that the grantor should also repeat his intentions that, upon the termination of the trust estate, that the land should go to the children; or, as the grantor says, "absolutely to the children"—that is, freed and discharged of the trust. The deed in previous part had already conveyed the land to the children, and the latter clause, wherein the word "absolutely"

is used in dealing with the trust, not the estate. The meaning of the word "absolutely," as used the second time in the clause, "absolutely share and share alike," is obvious, and need not be considered, except that it evidences the fact that the grantor knew that it had more than one meaning, and that he was familiar with its definitions. I shall not undertake to trace the origin of the word absolutely, or to state its many definitions. It may mean either complete or unrestricted, in the sense of not being conditional or temporary, as an estate in fee simple in contradistinction to a life estate, or complete or unrestricted in the sense of being a clear legal estate as distinguished from a trust, and its meaning depends upon the context in each case. As used by the grantor in this deed, I think that its meaning is clear, viz: that the grantor conveyed, and intended to convey, a life estate for the use of Mr. and Mrs. Dupreest to the trustee, in trust for them, and after their death the survivor of the parents, a life estate "absolutely" to the children—that is, freed and discharged of the trust. I will now refer to circumstances and clauses indicating an intention on the part of the grantor not to convey the fee simple to the trustee or the children. All the counsel dwelt upon the fact that H. H. Thomson, the grantor of the trust deed, was a prominent lawyer in his day, a leader at the bar, and engaged in active practice when he executed said deed. He knew that the word "heirs" was necessary in a deed— that but for the act of 1824 it would be necessary in a will; that it required said act to make a devise to one, without the word heir being added, carry the fee in land, and that no such act had been passed in reference to deeds; he knew the form of a deed, the legal terms constantly used in them, and how to use them; he knew, as his deed indicates, the distinction between an active and passive trust; and it passes the bounds of evidence, if Mr. Thomson was, as I assume, an honest man, to suppose, that if he had intended to convey the fee simple in the premises, he would not have done so in plain, common, and unmistakable terms. How easy,

natural, and convenient it was for Mr. Thomson to have followed the old and time-honored form of conveying, almost stereotyped and lithographed upon the minds of men, especially the practicing lawyer of fifty years ago, and have said Bennett and his heirs, or to the children and their heirs.

The grantor was familiar with the word heirs. This is manifested from the language he used in the warranty clause. While the warranty clause cannot enlarge an estate, it can be read as evidence of the grantor's familiarity with certain words and terms. Note, therefore, that in the warranty clause, the grantor does not use the word heirs, and is careful to restrict its meaning. He bound himself and his "heirs to defend the said premises unto the said trustee as aforesaid, for the uses and purposes aforesaid, free from the trust claims of all persons." A most unusual warranty, incapable of any reasonable explanation, except upon the theory that it referred to an estate in trust, limited to certain "uses and purposes." He was guarded in his terms not to warrant the title generally to the trustee, and not to warrant in any shape or form the title of the children, much less the title to their heirs. Defendants contend that the word "absolutely" is synonymous with "fee simple," and, as supporting this proposition, cite a number of cases, but especially *Bratton* v. *Massey*, 15 S. C., 277, and *Fuller* v. *Missroon*, 35 S. C., 314. I will refer to these further on.

Without going to details, there are important differences between the case at the bar and those cited. 1. Differences in language, indicating intention. 2. Differences which, for the want of a better term, may be called legal differences. If intention is to be sought for, the intention to convey a fee is not clear and manifest, as in *Bratton* v. *Massey* and in *Fuller* v. *Missroon, supra*. In both of these cases: 1. A fee was given to the trustee, not so here. 2. There was unlimited power of sale or disposal, not so here. 3. In *Bratton* v. *Massey*, the conveyance was in trust, to allow the *cestui que trust* to "use and occupy all of said property and estate," viz: the estate conveyed "to the trustee and his

heirs," admittedly fee. To allow the *cestui que* to use, occupy, and sell "the said estate," the fee made him the owner of the fee. 4. In *Fuller* v. *Missroon*, in addition to the power of disposal, was the further provision, that the estate was "to be vested in" certain issue, to be held by them as tenants in common. There is no such language here. *Harrelson* v. *Harris*, 39 S. C., 20. 5. In neither of these cases does it appear that the deed had been executed, as in this instance, by one learned in the law; nor that the word "heirs" had been carefully excluded therefrom. There is still a broader and stronger distinction between those cases and the one under consideration. They were cases in which the court could look for, and give effect to, an intention to convey a fee, whether apt words for that purpose were used or not.

The general rule is, that in all deeds the word "heirs" is necessary to convey a fee. It is the exception to the rule when a deed is held to convey a fee without the use of the word heirs, because of the intention of the grantor to convey a fee. An ordinary, legal conveyance without the word "heirs" will not convey a fee. *Harrelson* v. *Harris*, 39 S. C., 18 and 19. Among the few exceptions to the general rule, we find that if, in a trust deed, the estate given to the *cestui que trust* is a fee, the legal estate in the trustee will be held to be a fee, though the word "heirs" is not used, to fulfil the purposes of the trust. *Bratton* v. *Massey* established the further principle, that if a fee is given to the trustee, then the estate given to the *cestui que trust*, though the word "heirs" is not used, will be held to be a fee, if such intention can be gathered from the deed.

It would be doing away with the common law rule to hold, that where the word "heirs" is not used in conveying the estate with either reference to the trustee or the *cestui que trust*, the court may, notwithstanding the fact, supply it with reference to the *cestui que trust* to carry out a supposed intention of the grantor, and then supply it with reference to the trustee to fulfil the purpose of such supposed

estate. The courts of this State adhere to the common law. It required an act of the legislature to change that law in regard to wills. In the case of *Jordan* v. *Neece*, 39 S. C., 298, it was the clear intention of the grantor to convey the fee. In the deed in that case the language is used, "the right to which I do hereby bind myself * * * to warrant and forever defend unto the said John Jordan, his heirs and assigns forever," and it was held that said deeds did not convey a fee. See, also, *Varn* v. *Varn*, 32 S. C., 85.

Another essential difference between the case at the bar and those cited by counsel for defendants is, that the estate conveyed to the children, and now owned by Dr. Cleveland, was not equitable but a legal estate. If they take all under the deed, they take a legal title to the land as purchasers. There was no trust as to them. The trust expired with the death of the surviving parent. Dr. Cleveland's title is just the same as it would be if H. H. Thomson, instead of making the trust deed, had conveyed the premises directly to Julia Dupreest and the other children, naming them. There is another fact, apparent upon the face of the trust deed, involving not only the question of intentions, but also grave legal principles. In the premises or conveying part of said trust deed, Mr. Thomson conveyed the land "unto Dr. Wm. C. Bennett, as trustee of Mrs. Cynthia Dupreest." There is not a word or even reference to the children. The trustee is, in express terms, appointed for Mrs. Cynthia Dupreest. Is the maxim *expressio uniuo exclusio alterius* applicable? The "children" are mentioned for the first time in the habendum of the deed. The estate of the children, if any, is also conveyed in the habendum; strike out the habendum, and the children and their rights are absolutely eliminated from the deed. Can an estate be conveyed in the habendum of a deed? I must assume that it can, because, in the case of *McLeod* v. *Tarant*, 39 S. C., 271, Mr. Justice Pope, who delivered the opinion of the Supreme Court, says it can be done. Mr. Justice McGowan concurred in the result of the opinion, but Mr. Chief Justice McIver

dissented. The decision is binding upon this court, and until modified or overruled, if it ever should be done by the Supreme Court itself, I shall respect and follow it. I conclude, and so hold, that Dr. Cleveland's interest or estate in said land is only for the lives of such of the Dupreest children as are yet alive.

*Messrs. Bomar & Simpson*, for plaintiff, appellant.

*Messrs. Ralph K. Carson* and *Duncan & Sanders*, for defendants, appellants.

March 24, 1896. The opinion of the court was delivered by

MR. JUSTICE GARY. This action was commenced by the plaintiff against the defendant, Nolen, to foreclose a mortgage given for part of the purchase money of the land described in the complaint. J. F. Cleveland was afterwards made a party defendant, as will hereafter appear. On the 15th day of July, 1889, the plaintiffs executed and delivered to the defendant, Nolen, a deed of conveyance of 200 acres of land on Fair Forest Creek, in the county and State aforesaid, with the usual covenants of warranty. The purchase money of the said tract of land was $4,500, of which sum $2,500 was paid in cash, and the credit portion, $2,000, was secured by the bond of Nolen, and a mortgage of the premises sold to him. The bond is dated the 15th of July, 1889, and is conditioned for the payment of the said sum, $2,000, on or by 1st of January, 1890, with interest from its date at the rate of ten per cent. per annum. On the 13th of January, 1890, Nolen paid $1,400, and has since refused to make any further payment, on the ground that there is a defect in the title to the extent of 30¼ acres, of which he has never had possession, but that the possession is in a third party, holding by a valid subsisting title in *fee*. The defendant, Nolen, contends that the loss of this portion of the land not only satisfies the balance due upon the bond and mortgage, but has also damaged him in the sum of $1,000.

The issues were referred to the master, who reported upon the same. The case was heard upon exceptions to this report by his honor, Judge Fraser, who, after deciding certain issues, recommitted the case to the master to take further testimony. A motion was made before his honor, Judge Wallace, to amend the complaint by making Dr. J. F. Cleveland a party defendant to the action, which motion was refused. His honor, Judge Izlar, after recommitting the case to the master for the third time, rendered a decree in the case. Both parties appealed from the aforesaid order and decree. On the 27th of December, the Supreme Court filed its opinion, wherein it was directed that Dr. J. F. Cleveland be made a party defendant, and that the case be remanded to the Circuit Court for a reconsideration of the questions involved. See *Hunt* v. *Nolen*, 40 S. C., 284.

The original complaint was amended, and J. F. Cleveland made a party defendant. Dr. Cleveland's answer alleges that he is in possession of a part of the land covered by the deed of the plaintiffs to the defendant, Nolen, and that he is the owner in fee thereof; also, that he has title by adverse possession; states the sources of his title, and insists that the plaintiffs, and those through whom they claim, are estopped by laches from claiming the land. Plaintiffs interpose an oral demurrer to the answer of the defendant, Nolen, and the demurrer was applicable to the answer of the defendant, Cleveland. The demurrer was overruled, for the reasons stated in the decree of the Circuit Judge.

It appears that H. H. Thomson, the father of W. W. Thomson, through whom the plaintiffs claim, at one time owned 386 acres of land on Fair Forest Creek, the larger portion of which was on the west side of the road. In 1852, H. H. Thomson conveyed to one J. W. Wilson in fee simple about fifty acres of said land. This parcel has come on down, by regular chain of title, to M. L. Trimmier, who now owns it. In February, 1853, H. H. Thomson, in consideration

of $500, conveyed to "Dr. Wm. C. Bennett, as trustee of Mrs. Cynthia Dupreest, a certain tract of land * * * on the waters of Fair Forest Creek, * * * bounded as follows (then follows a description of the lines and abutments): containing fifty acres, more or less, * * * to have and to hold, all and singular the said tract of land to the said Dr. Wm. C. Bennett, as trustee, in trust always, and for the uses and purposes hereinafter expressed and declared. That is to say, in trust for the use, behoof, and benefit of the Mrs. Cynthia Dupreest, for and during the term of her natural life; to permit her, the said Mrs. Cynthia Dupreest, at her good will and pleasure, the same receiving and enjoying all and singular the rents, profits and increase, interest and interests thereof, during the term of her natural life, and at her death to be held in trust for the benefit of her husband, James Dupreest, during his natural life, should he survive the said wife, Cynthia Dupreest, free from all his debts or liabilities of all kinds whatsoever, and at his death to be equally divided amongst all the children of the said Cynthia Dupreest. And it is hereby understood, that the said Cynthia Dupreest to have full control of the said land, rents, profits and emoluments; to use and dispose of the said rents, emoluments and profits as she may deem best for her sole benefit, free from all control whatsoever.

The said Dr. Wm. C. Bennett, as trustee, to have and to hold the said premises in trust during the term of the joint lives of the said Cynthia Dupreest and James Dupreest, during their natural lives, then to go absolutely to the children of the said Cynthia Dupreest, absolutely share and share alike. And I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend all and singular the said premises unto the said trustee as aforesaid, for the uses and purposes aforesaid, free from the trust claims of all persons, lawfully claiming or to claim the same or any part thereof."

The land described in this deed was partitioned by the Court of Common Pleas for said county in 1882. The

action for partition was brought by J. S. R. Thomson, Esq.,
as attorney for the plaintiff in that action. The complaint
alleged that the children were tenants in common, and
seized in fee. All the children of Cynthia Dupreest who
were then living, and their assignees, were properly made
parties to said proceeding. A writ in partition was issued.
The commissioner appraised the land at $750, but reported
that it could not be partitioned in kind among the parties
in interest without injury. The land was then sold by
order of court, for partition, in July, 1882, at which sale Dr.
J. F. Cleveland and J. S. R. Thomson were the purchasers.

Mr. Thomson assigned his bid to Dr. Cleveland, to whom
the sheriff duly executed and delivered a deed, and the
title to the land was thereafter duly confirmed by the court.
This deed to Dr. Cleveland was duly recorded in the clerk's
office.

The 386 acres of land hereinbefore mentioned were
allotted and assigned to W. W. Thomson in the partition of
the real estate of H. H. Thomson, the date of which was
not given, but his honor says it might have been between
the years 1853 and 1875. Appellants' attorneys, in their
arguments, state that it was in 1868. We desire to call
special attention to the fact that 386 acres, which includes
the land in dispute, were assigned to *W. W. Thomson*. The
description of the land conveyed by W. W. Thomson to J.
H. Hunt on the 28th of December, 1875, is as follows: A
certain tract of land, lying on the waters of Fair Forest
Creek, and containing 200 acres. Said parcel or tract of
land hereby sold, is to be taken out of a tract of land on
Fair Forest Creek which I own, and is to be set off by
metes and bounds according to the metes or bounds of the
the original tract I own, except that said 200 acres is to be
next to, but entirely on, the west side of the main public
road. The following are the courses and boundaries of the
land I own, on the west side of the said road. (They are
then set forth). The description of the land conveyed by
J. H. Hunt to these plaintiffs is the same as that just

mentioned, except the statement: Said tract or parcel of land being the same which was conveyed to me by W. Waddy Thomson, on the 28th December, 1875. The description of the land conveyed by the plaintiffs to Nolen is similar, except the statement: Being the same land conveyed to J. H. Hunt by W. Waddy Thomson, 28th December, 1875, and to Amanda C. Hunt and Marie Hunt by J. H. Hunt, 20th January, 1877.

His Honor, Judge Aldrich, in his decree, says: "I conclude and so hold, that Cleveland's title is outstanding, and paramount to that of defendant, Nolen, for the five undivided eighths in said thirty and a quarter acres, and that said title, and his possession thereunder, is limited to the lives of the surviving children of Cynthia Dupreest; that his right to each child's share terminates upon the death of said child, and the right of Nolen to each child's share matures, becomes complete, upon the death of each child. Having held that Cleveland's title to an undivided portion of said land is restricted to a life estate or estates, I hold that the title of Cleveland constitutes a breach of warranty and covenant of title, &c., contained in the deed of plaintiffs to Nolen, and that the damage must be measured by the value of the life estates." His Honor then proceeds to lay down the principles for determining such valuations, after which he decrees foreclosure of the mortgage for $657.53, in favor of the plaintiff against the defendant, Nolen. Numerous exceptions were filed to said decree, but the view which the court takes of the case renders it unnecessary to consider them *seriatim.* Furthermore, none of the exceptions, except those to the decree of his Honor, Judge Aldrich, are properly before the court for consideration, as the case was remanded for the purpose of having a reconsideration of the questions involved.

The first question for our consideration is, what interest did Dr. Cleveland acquire by the sheriff's deed of conveyance of the land which had been conveyed by H. H. Thomson to Dr. Wm. C. Bennett, trustee? The answer to this question

24—46

depends upon a construction of the deed to Dr. Bennett. The construction of a deed necessarily depends very much upon the exact words of the particular deed.

It is elementary law that the court should endeavor to ascertain the intention of the grantor and carry it into effect, except in so far as it may contravene some rule of law. What, then, was the *intention* of H. H. Thomson? There can be no question that the grantor intended Mrs. Cynthia Dupreest should enjoy the estate during her lifetime. There is as little doubt that he also intended her husband, if he survived her, should likewise enjoy the estate during his lifetime. The grantor then says, "and at his death to be equally divided amongst all the children of the said Cynthia Dupreest." Again, in speaking of what should be done after the termination of the life estates, he says: "Then to go absolutely to the children of the said Cynthia Dupreest, absolutely, share and share alike." That the word "absolutely" is sufficient to carry the fee in a case like this, is conclusively shown by the case of *Fuller* v. *Missroon*, 35 S. C., 314, in which Mr. Justice Pope ably reviews the authorities sustaining this rule of construction, and renders it unnecessary for this court to do more than refer to that case for its conclusion. It is, however, contended by the Circuit Judge that the word "absolutely" in this case means "freed and discharged of the trust," and has no reference to the "estate" which the grantor intended should be conveyed to the children. It is a rule of construction that, if possible, effect should be given to every word in an instrument of writing rather than to render any of them meaningless. If the Circuit Judge was right in his construction, then there was no necessity for the word "absolutely;" as the deed showed that the trustee was only to hold during the lifetime of Mrs. Cynthia Dupreest and her husband, and there was nothing for him to do after that time. Another strong circumstance is, that when the grantor referred to a "life estate," his words were plain and unequivocal, leaving no room for doubt. We are, there-

fore, satisfied that the children took a *fee* under the deed, and that Dr. Cleveland now owns said land in fee simple.

We will next consider whether there was a defect in the title to Nolen by the plaintiffs, constituting a breach of the warranty. The 386 acres of land, which, it seems, lies on both sides of the public road, was assigned to W. W. Thomson in the partition of the real estate of H. H. Thomson, but, after the fifty acres sold to J. W. Wilson, now owned by M. L. Trimmier, and the fifty acres sold to Dr. Bennett, trustee, had been conveyed by H. H. Thomson. Both of these tracts lie on the west side of the road. The deed from W. W. Thomson to J. H. Hunt call for 200 acres on the *west* side of the road, not 200 acres, *more or less.* W. W. Thomson did not sell all the land on the *west* side of the road, but described how the 200 acres were to be carved out of the tract on that side of the road. Not only did W. W. Thomson sell just 200 acres, but the deed stipulated that it was to be carved out *next to the road.* Dr. Cleveland's land is not next to the road. It does not appear that W. W. Thomson has ever made any claim either to the tract sold to Wilson or Dr. Bennett. It does not appear that the exact number of acres on the west side of the road was known when W. W. Thomson conveyed to Hunt. We do not think W. W. Thomson intended to convey any part of the land which had been conveyed to Bennett, trustee. On the contrary, that the land, being 200 acres, and not "more or less," and the stipulation that the 200 should be carved out next to the road, show he intended to exclude the Bennett tract from the conveyance. That his reason for so doing was, that the land on the west side of the road was about 200 acres, exclusive of the other two tracts, and, if so, then that he would own the Bennett tract, provided the children only had life estates. It, however, is shown by actual survey, that the land conveyed to J. H. Hunt only contains a fraction over 169 acres. We, therefore, hold that there

was a defect in the title to Nolen, constituting a breach of the warranty.

Having found that there was a breach of the warranty, the next question is, as to the amount of damages sustained. The measure of damages will be found by calculating the value of $30\frac{1}{4}$ acres, with interest thereon from the delivery of the deed. *Aiken* v. *McDonald,* 43 S. C., 29, and authorities therein cited. The calculation shows that there is nothing due on the mortgage. The decision of these questions renders it unnecessary to consider any other question in the case.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.

MR. CHIEF JUSTICE MCIVER, *dissenting.* I dissent, and think that the circuit decree of his Honor, Judge Aldrich, should be affirmed for the reasons which he has set forth, to which I do not deem it necessary to add anything.

*Rehearing 46 46 551*