14100

FIRST CAROLINAS JOINT STOCK LAND BANK OF COLUMBIA v. FORD *ET AL.*

(180 S. E., 562)

41

*Messrs. Gettys & Shannon* and *M. M. Johnson,* for appellants,

*Messrs. Melton & Belser* and *Irvine F. Belser,* for respondent,

June 28, 1935.

The opinion of the Court was delivered by Mr. Justice Fishburne.

On November 20, 1880, W. W. Stokes executed and delivered a certain deed, the parts of which pertinent to this appeal read as follows:

"The State of South Carolina, County of Kershaw

"Know all men by these presents that I, W. W. Stokes, for and in consideration of the natural love and affection which I have and bear to my children, viz.: Joseph F. Stokes, John H. Stokes, Eliza A. Stokes, Julia V. Stokes, Henry F. Stokes, and Chas. T. Stokes, do give, grant, alien, release, convey and confirm unto the said Joseph F. Stokes, John H. Stokes, Eliza A. Stokes, Julia V. Stokes, Henry F. Stokes and Charles T. Stokes all that plantation or tract of land situate, lying and being in said county containing five hundred and thirty acres, more or less, bounded North by estate of J. Holland, etc.

"Also all my personal property including all my stock, household kitchen furniture, etc. together with all and singular the rights, members, hereditaments, and appurtenances to the said premises belonging or in anywise incident or appertaining. To Have and to Hold the said premises for and during their natural lives, and at their death to their children or issue, share and share alike. If any of the above named children should die leaving no child or children, then the share of such child or children shall be equally divided among such children, then living.

"Saving and reserving however to the said grantor and his said wife, Mary A. Stokes for and during the period of their natural lives and to the survivor during the life of such survivor (provided my wife Mary A. Stokes remain a widow) the right to have, hold, use, occupy and possess the same to their own proper use and benefit. And the said Mary A. Stokes, the wife of W. W. Stokes hereby approves and confirms the above deed."

At the time of the execution of this deed, the grantors were in possession and occupancy of the land, the children named were all alive and *in esse;* their ages ranging from 1 to 14 years. Henry F. Stokes, one of the grantees. died when about 16 years of age, intestate and unmarried, and prior to the year 1898. W. W. Stokes died in 1819, intestate, and Mary A. Stokes died intestate in 1916. In the year 1892, Eliza Stokes married Frank Peeples, and in 1894 Julia V. Stokes married L. T. Pate. In the year 1898, all of the grantees named in the deed, except Henry F. Stokes, who had died, entered into a partition arrangement whereby the tract of land was partitioned among themselves, and in pursuance of this arrangement Joseph F. Stokes, John H. Stokes, Chas. T. Stokes, and Eliza Stokes Peeples executed their deed conveying all their right, title, and interest in 109 acres of the tract of land to Julia V. (Stokes) Pate, which deed was dated November 14, 1898, and was recorded in the clerk's office for Kershaw County on November 24, 1898.

On February 16, 1926, Julia V. Pate executed her mortgage covering the 109-acre tract (a survey showed it to contain 107 acres) to the plaintiff, the First Carolinas Joint Stock Land Bank of Columbia, as security for her note to said bank in the sum of $2,000.00. This mortgage was the usual fee-simple mortgage with general warranty.

Default was made in the payment of the mortgage debt, the mortgage was foreclosed, the land sold and bid in by the plaintiff, who, on November 14, 1929, received a deed to the tract of land from the Master for Kershaw County in pursuance of the decree and sale, and immediately went into possession of the premises.

All of the children of W. W. Stokes and Mary A. Stokes, except Henry F. Stokes, who died unmarried and intestate, had children born to them. Julia V. Stokes Pate died on March 3, 1933, leaving eleven children, all of whom are defendants herein.

Subsequent to the death of Julia V. Pate, one of her children, the defendant Eugene Samuel Pate, entered upon the tract of 107 acres, occupied and has since occupied the dwelling thereon, and has cultivated a portion of the land, basing his claim of right to occupy said property under the deed of W. W. Stokes and Mary Stokes.

This action was commenced against the children and grandchildren of W. W. Stokes and Mary A. Stokes to construe the said deed, to remove the cloud on plaintiff's title, and for an injunction against the alleged trespass; the contention set forth in the complaint being that said deed conveyed to the grantees a fee conditional which became a fee absolute upon the birth of issue, and that under the mortgage of Julia V. Pate and the Master's deed to plaintiff bank resulting from a foreclosure of said mortgage, the plaintiff bank acquired a fee-simple absolute. The children of Julia V. Pate, above named, together with the defendants Carl Stokes, Willie Stokes, and Manson Stokes, answered on behalf of themselves and other defendants who might join in the defense, setting up that under the aforesaid deed

the grantees took only a life estate, with remainder in fee to their children, and upon the death of Julia V. Pate, the rights of plaintiff bank in the premises terminated, and her children, as remaindermen, became entitled to the immediate possession of the land.

The cause was heard by Judge W. H. Townsend, at chambers, on an agreed statement of facts, who on June 6, 1934, filed his decree, holding and finding that under the rule in *Shelley's case* the deed created a fee conditional in the grantees named, and hence, after condition performed, that the respondent bank had an absolute fee-simple title to the land involved.

After entry of judgment, the answering defendants duly appealed to this Court, and by their exceptions raise two questions; namely:

(a) The deed conveyed only a life estate, and the rule in *Shelley's case* does not apply.

(b) The deed should be construed to be a covenant to stand seized to uses, and the grantees took a life estate with remainder in fee to their children.

We proceed to consider the first question.

The rule in *Shelley's case* is not a rule of construction, but a rule of law or property. Therefore, it is not properly a matter to be considered until the meaning of the instrument has been ascertained under the rules of construction. When the intention of the grantor has been ascertained under the ordinary rules of construction, then the question properly arises, Does that intention so ascertained violate the rule of law in *Shelley's case*?

Therefore, our first concern in passing upon the issues here presented is to determine the real intention of the grantor in the deed which is before us on appeal. And to this end the following principles, adjudicated by this Court in previous cases, shall guide us:

The paramount and cardinal rule of construction of a deed is to ascertain the intention of the grantor as expressed by him in the deed, and then to give effect

to that intention if it can be done without violating an established rule of law. *Rhodes v. Black,* 170 S. C., 193, 170 S. E., 158.

Larger and more sensible rules of construction require that the whole deed should be considered together, and effect be given to every part, if all can stand together consistently with law; that an exposition favorable to the intention should be made, if not contrary to law; that the intention should be regarded as looking rather to the effect to be produced than the mode of producing it; that too minute a stress should not be laid on particular words, if the intention be clear, and that, if the deed cannot operate in the mode contemplated by the parties, it should be construed in such manner as to operate, if possible, in some other way. *Chancellor v. Windham,* 1 Rich., 161, 42 Am. Dec., 411.

The object of construction as to deeds, in fact, as to all papers in contest before the Courts, is to reach the intention of the parties, because it is this which must control; otherwise, the contract would be the contract of the Court and not of the parties. *McCown v. King,* 23 S. C., 232.

If a question of law arises upon the construction of a deed, it is the province of the Court to construe it, and to decide from the language what the intention of the party was. When the intention of the parties can be plainly ascertained, arbitrary rules are not to be resorted to. The rule is that the intention of the parties is to be ascertained by considering all the provisions of the deed, as well as the situation of the parties, and then to give effect to such intention, if practicable, when not contrary to law. *Pope v. Patterson,* 78 S. C., 334, 58 S. E., 945; *Crawford v. Lumber Company,* 79 S. C., 166, 60 S. E., 445; *Smith v. Clinkscales,* 102 S. C., 227, 85 S. E., 1064; *Antley v. Antley,* 132 S. C., 306, 128 S. E., 31.

Subordinate to the foregoing fundamental rules of construction, and as guides to the Court in ascertaining and giving effect to the intention of the grantor as expressed in a deed, are the following rules:

If there are two incompatible, repugnant, or con-. tradictory clauses the first will prevail over the latter. *Smith v. Clinkscales, supra; Crawford v. Lumber Co., supra.*

The clauses of a deed may be transposed in order to give effect to the intention of the grantor. *McCown v. King, supra.*

To give effect to the grantor's intention, one word may be construed as another. *Rhodes v. Black, supra; Bank v. Dominick,* 116 S. C., 228, 107 S. E., 914; *Sease v. Sease,* 64 S. C., 216, 41 S. E., 898; *Keith v. Perry,* 1 DeSaus., 353; *Church v. Moody,* 98 S. C., 234, 82 S. E., 428.

Keeping the foregoing rules of construction before us, we think the intention of the grantor is clear.

The habendum clause appearing in the deed under discussion is as follows: "To Have and to Hold the said premises for and during their natural lives, and at their death to their children or issue, share and share alike. If any of the above named children should die leaving no child or children, then the share of such child or children shall be equally divided among such children, then living."

In the first place, it is not possible to escape the conclusion that this clause carried an express limitation to the children of the grantor for life. This intention is too clear for argument. He *intended* them to take only a life estate.

And it is equally manifest that when the grantor used the expression "to their children or issue, share and share alike," when taken in connection with the superadded words, he meant his grandchildren, the children of the life tenants, and that they should take as purchasers; and the whole context shows that the word "issue" was used in the sense of, and synonymously with, the word "children," which word immediately preceded it.

In *Dixon v. Pendleton,* 90 S. C., 8, 72 S. E., 501, 2 A. L. R., 915, the Court had under consideration the construction of a will containing this clause, "and at her death

to the issue of her body who may then be living." The Court held that the phrase, "issue of the body" was therein used in the sense of "heirs of the body," and it was aided and influenced in reaching this conclusion by the following reasoning, which we find in 90 S. C., 8, at page 12, 72 S. E., 501, 503, 2 A. L. R., 915: "In this long will the testator seems to carefully avoid using the common words 'child' or 'children,' and repeats the word 'issue' many times in referring to the descendants of his children."

In the clause under consideration here it will be observed that the words "child or children" appear seven times, and the word "issue" only once. By following the same line of reasoning as was employed in *Dixon v. Pendleton, supra,* we reach the reasonable and logical conclusion that the word "issue" was of purely secondary importance in the mind of the grantor, and that "child and children" were paramount.

In order to make complete harmony in all parts, "the four corners" of this deed, we must conclude, in line with the clearly expressed intention of the grantor, that the word "issue" merged into the word "children," and was used synonymously therewith for the purpose of conveying the same restricted meaning. Indeed, the grant taken as a whole shows by every word and phrase that the grantor meant to provide for his children and grandchildren, after first reserving a life estate unto himself and his wife, Mary A. Stokes or the survivor.

But it is contended by the respondent bank, and it was so held in the circuit decree, that the word "children" in this habendum clause merged in and was absorbed by the word "issue," and that the word "issue" should be construed in its technical sense, thereby vesting in the children named (the first takers), a fee conditional estate.

Even a casual reading of the clause under discission plainly evinces that the grantor did not use the word "issue" in its technical sense so as to carry the meaning of an indefinite succession to the remotest posterity. The expression

found therein, "share and share alike," and the sentence, "If any of the above named children should die leaving no child or children, then the share of such child or children shall be equally divided among such children, then living" completely negatives any such reasoning.

The purpose of the grantors being clear, it is now necessary to determine whether or not there is any principle of law that would defeat this intention.

The decree held that the limitation in the deed to the named grantees during their natural lives, and "at their death to their children or issue," was equivalent to a limitation to the named grantees, "and the heirs of their body," which under the rule in *Shelley's case* were apt words to create a fee conditional in the named grantees, but did not carry the remainder in fee to their children or issue as purchasers. Under that rule as has been frequently stated, "Where an estate of freehold is limited to a person, and the same instrument contains a limitation either mediate or immediate, to his heirs, or the heirs of his body, the word heirs is a word of limitation, *i. e.*, the ancestor takes the whole estate comprised in this term. Thus if the limitation be to the heirs of his body he takes a fee tail, or fee conditional; if to his heirs general a fee simple." *Austin v. Payne,* 8 Rich. Eq., 9, 10.

However, the conclusion that the rule must be applied in this case and the deed held to carry a fee conditional to the grantees named does not follow from a consideration of the language used, nor under the authorities construing such language.

The circuit decree and respondent's brief are buttressed with numerous citations of cases holding that such words of limitation as "heirs of the body," "issue," "issue of the body," "lawful issue," "lawful heirs," and equivalent expressions, come within the rule announced in *Shelley's case*. We agree; but with the qualification that these familiar phrases must be so construed with reference to their own peculiar setting, context, and background.

These cases have no application here. They only serve to show by way of contrast and comparison that the instant case does not come within the rule. They are cited upon the erroneous assumption that the limitation appearing in the deed, "at their death to their children or issue," is equivalent to a limitation to the named grantees "and the heirs of their bodies."

To reach any such conclusion would completely thwart the manifest intention of the grantor, and necessitate a forced and unnatural construction, which we are unable to indulge. In this deed the grantor refers to the love and affection which he bears to his children ("my children," as stated in the deed), and it is also clear from a reading of the whole clause that this love and affection did not end with the named grantees, his children, to whom he gave only a life estate, but extended to and included in an equal degree his grand-children, who are parties defendant in this action.

It has been held in numerous cases, and was declared by this Court in *Bank of Prosperity v. Dominick,* 116 S. C., 228, 107 S. E., 914, 916, that the limitation over, after a life estate, to the issue or body issue, is equivalent to "heirs of the body," and under the rule in *Shelley's case* would carry a fee conditional in the first taker *in the absence of the disclosed intention that these words were not to be taken in the sense of an indefinite line of succession.*

The foregoing case, and many others along the same line, are cited in respondent's brief, but they do not apply, for the reason that as we have already shown, the grantor in the deed in the instant case did with great clarity disclose an intention completely negativing any idea of an indefinite line of succession by the use of the language which he employed. The superadded words appearing in the habendum show that the grantor used the word "issue" in the sense of "children," rather than in its technical aspect.

In the case of *Rowe v. Moore,* 89 S. C., 561, 72 S. E., 468, 470, there was a devise to one for life, with remainder to the heirs of her body. This well-defined expression or

limitation, within the rule in *Shelley's case,* was, however, denied its technical signification, and because of other expressions in the will, was held to have been used in the sense of "children." The Court said: "It is true that the rule in *Shelley's case* is still binding authority in South Carolina, but when it appears that the words 'heirs,' 'heirs of the body,' or 'issue' *are so qualified by additional words* [italics ours] in the will as to evince an intention that they are not to be taken as descriptive of an idenfinite line of descent, but are used to indicate a new stock of inheritance, the rule in *Shelley's case* does not apply."

There are numerous other cases in this State in which this Court has held that the expressions "heirs," "heirs of the body," etc., are to be construed under the circumstances of the particular cases as if they read "children." *Burton v. Burton,* 113 S. C., 227, 102 S. E., 282; *Rembert v. Evans,* 86 S. C., 445, 68 S. E., 649; *Bailey v. Patterson,* 3 Rich. Eq., 156; and many others.

In *McCorkle v. Black,* 7 Rich. Eq., 407, it was held that in a devise of lands to two or more persons to be equally divided among them, "to them during their lives, and after their death to their lawful issue"; followed by a provision that if any of the said devisees should die, "leaving no lawful issue, the portion or portions of him or her so dying shall be equally divided among the survivors"; the first takers or devisees named in the direct bequest took a life estate with remainder to their issue as purchasers.

In *Duckett v. Butler,* 67 S. C., 130, 45 S. E., 137, 138, the Court said: "When not in violation of some rule of law, the intention of the maker must prevail, and such intention should be ascertained from a consideration of the whole instrument. According to our decisions, it is always open to inquiry whether the grantor or testator used the word 'heirs' according to its strict and proper acceptation, or in a more inaccurate sense to denote 'children.' * * * Cases like *Whitworth v. Stuckey,* 1 Rich. Eq., 404; *Bethea v. Bethea,* 48 S. C., 440, 26 S. E., 716; *Simms v. Buist,* 52

S. C., 554, 30 S. E., 400, do not conflict with this view, for there was nothing in the instruments under consideration in these cases to show that such terms as 'lawful issue of body,' 'heirs of her body,' were used in a restricted sense, denoting children."

In the case of *McWhite v. Roseman,* 114 S. C., 177, 103 S. E., 586, this Court refused to treat the expression "bodily heirs" as an expression of limitation under the rule in *Shelley's case,* because in other parts of the will the language used by the testator indicated that he used the word "heirs" in the sense of "children," rather than in its technical aspect.

This Court has held that if a legal construction of the limitation demands the interpretation of indefinite succession, the intention of the donor is absolutely negligible, but that, if by any expression in the will, in a superadded clause or elsewhere, the question does not demand an arbitrary solution, but is open to inquiry, the intention so ascertained will when so construed annihilate the conception of indefinite succession, and fix the interests of the remaindermen as direct donees of the testator's bounty, the stock of a new inheritance. That the superadded clause, or, in fact, any other portion of the will, may be resorted to for the purpose of ascertaining the intention of the grantor in this limited particular is well established; not the intention of the testator as to how the estate should go, but as to the capacity in which the remaindermen should take, whether as heirs of the donee, or as direct objects personally of the donor's bounty. *Myers v. Anderson,* 1 Strob. Eq., 344, 47 Am. Dec., 537; *McLure v. Young,* 3 Rich. Eq., 559; *Smith v. Hilliard,* 3 Strob. Eq., 211; *McWhite v. Roseman,* 114 S. C., 177, 103 S. E., 586; *Pearson v. Easterling,* 104 S. C., 178, 88 S. E., 376; *Williams v. Caston,* 1 Strob., 130; *Ferril v. Talbot,* Riley, Eq., 247; *Henry v. Stewart,* 2 Hill, 328; *McCorkle v. Black,* 7 Rich. Eq., 407; *Brummet v. Barber,* 2 Hill, 543; *Reeder v. Spearman,* 6 Rich. Eq., 88; *Rowell v. Hyatt,* 108 S. C., 300, 94 S. E., 113; *Guy v. Osborne,* 91 S. C., 291, 74

S. E., 617; *Carrigan v. Drake,* 36 S. C., 354, 15 S. E., 339; *Waller v. Ward,* 2 Speers, 786.

The latest case on this subject to receive the attention of the Court is that of *First Carolinas Joint Stock Land Bank v. Deschamps,* 171 S. C., 466, 172 S. E., 622, 626, where will be found practically every authority cited in the circuit decree and in respondent's brief in the case at bar. In that case the Court quoted with approval the following: "It must not, therefore, be understood, says Mr. Jarman, that even the technical expression, 'heirs of the body,' is 'incapable of control or explanation by the effect of super-added expressions, clearly demonstrating that the testator used those words in some other than their ordinary accepta-tion, and as descriptive of another class of objects.'—(2 Jarm. on Wills, 300.) Although a difference of opinion exists among Judges as to the word issue, yet, it seems now settled, that unless restricted by the context, this expression cannot be satisfied by applying it to descendants at a particu-lar period. But if, from superadded expressions, or from the context, or from other parts of the will, it is manifest that the testator used the term as synonymous with 'children,' or intended to describe a class of persons to take at a particular time; issue will be construed as a word of pur-chase, and not of limitation. And this rule is equally ap-plicable to every other expression used as synonymous with heirs of the body. Whenever the words 'heirs of the body' would be explained to mean some other class of persons, the same construction is given to the synonyms, and the rule in *Shelley's case* does not apply.—(2 Jarm. 281.)"

But we are "carrying coals to Newcastle." It is unneces-sary to cite additional authorities; needless to take more books from the shelves.

It thus appears that even if the word "children" had been left out of the habendum clause, and the limita-tion had been only to "issue," under the cases im-mediately mentioned above, this Court would be compelled to hold that the word "issue" should be taken to mean

"children," which would achieve the same result and would leave us where we now are, and that is, with the conclusion that the rule in *Shelley's case* does not apply, and that the named grantees in the deed took a life estate, with the remainder to their children as purchasers.

This finding, however, does not yet dispose of the fee.

The appellant contends that the deed should be construed as a covenant to stand seized to uses, and that the grantees took a life estate with remainder to their children in fee.

The case of *Bank of Prosperity v. Dominick, supra,* seems conclusive of the case at bar.

The habendum clause of the deed in that case reads: "Unto the said Louisa Dominick, during her natural·life, and at her death to be equally divided between the body issue of Henry and Louisa Dominick, and in case of her death before mine, I am to enjoy all the uses and privileges of said lands herein conveyed until my death, and then to be equally divided as above provided for and her heirs and assigns forever."

The Court held that the words "her heirs and assigns forever," at the end of the clause might be read out of the deed, and continues: "There remains, therefore, the grant of a life estate to Louisa, and at her death the land was to be equally divided among said 'body issue.' It has been held in numerous cases that the limitation over, after a life estate, to the issue, or body issue, is equivalent to 'heirs of the body,' and under the rule in *Shelley's case* would carry a fee conditional in the first taker, in the absence of a disclosed intention that these words were not to be taken in the sense of an indefinite line of succession. In the deed under review the expressions, 'at her death,' 'to be equally divided,' and the reservation of a possible life estate in the grantor, plainly show that an indefinite line of succession was not contemplated. Accordingly we construe the words 'body issue,' as meaning children or their representatives *per stirpes*. With this· construction a further difficulty is presented in

the absence of words of inheritance which should accompany the grant to the children as a fee-simple estate. As a covenant to stand seized, the deed does not require words of inheritance to carry the fee to the remainderman, as has been held in the following cases: *Foster v. Glover,* 46 S. C., 522, 24 S. E., 370; *Hunt v. Nolen,* 46 S. C., 356, 24 S. E., 310; *McMichael v. McMichael,* 51 S. C. [555], 558, 29 S. E., 403; *Holder v. Melvin,* 106 S. C. [245], 252, 91 S. E., 97. That it has all the elements of such a covenant as laid down in the case of *Watson v. Watson,* 24 S. C., 228, 58 Am. Rep., 247, and the cases there cited is apparent: (1) Consideration of natural love and affection; (2) blood relationship; (3) enjoyment of fee-simple in future. The result is the same, that Louisa Dominick took a life estate, with remainder to her children *per stirpes* in fee-simple."

In the instant case, we have all the considerations moving the Court to its conclusion in the *Dominick case:* The expressions "at their death," "share and share alike" (the equivalent of to be. equally divided), and the reservation of a life estate in the grantors. We have all the elements of a covenant to stand seized as laid down in *Watson v. Watson, supra,* and approved in *Bank v. Dominick, supra:* (1) Consideration of natural love and affection (the very words used in the deed before the Court); (2) blood relationship (the relationship is shown in the deed to be parent and child); and (3) enjoyment of fee-simple in future.

This case likewise disposes of the contention of respondent made on circuit, that the absence of words carrying the fee to the remaindermen shows that the rule in *Shelley's case* must be applied, for as said in the opinion of the Court, under a covenant to stand seized, words of inheritance are unnecessary to carry the fee.

In the recent case of *Campbell v. Williams,* 171 S. C., 279, 172 S. E., 142, 145, the reasoning of the Court in *Bank v. Dominick, supra,* was approved and reaffirmed. The limitation was to "issue of her body." These words were construed to mean children, and the circuit decree (by his

Honor, Judge Townsend), which was adopted as the opinion of the Court, urges the further reason for the conclusion reached:

"There is another reason that leads me to this conclusion: This deed presents all of the elements of a covenant to stand seized to uses. *In Bank of Prosperity v. Dominick* (1921), 116 S. C., 228, 107 S. E., 914, there was a limitation in a deed from husband to wife 'unto the wife for her natural life and at her death to be equally divided between the body issue of the husband and the wife.' It was argued in that case that the wife took a fee conditional, but our Court unanimously held that the wife took merely a life estate, and that the body issue took a fee simple, as purchasers. Judge Cothran, speaking for the Court, said that the phrase 'body issue,' was legally equivalent to the words 'heir of the body,' and under the rule in *Shelley's case* would carry a fee conditional in the first taker, in the absence of a disclosed intention that these words were not to be taken in the sense of an indefinite line of succession. In that case he found that the expressions 'at her death,' and 'to be equally divided' prevented the application of the rule in *Shelley's case,* and therefore the words 'body issue' were construed as meaning 'children' or their representatives *per stirpes.* It is noticeable that in that case the Court held it was unnecessary that the word 'heirs' should be annexed to the estate of the remaindermen in order to create a fee-simple in a covenant to stand seized to uses.

"To the same effect is the case of *Gaines v. Sullivan,* 117 S. C., 475, 109 S. E., 276, 277."

See, also, *Rhodes v. Black, supra.*

The case of *Gaines v. Sullivan, supra,* fully sustains the conclusion reached, and we shall quote only the first paragraph of the syllabus: "A deed conveying land to the grantor's daughter during her lifetime, but reserving a life estate to the grantor, and conveying such land on the death of the daughter to such of her children as might be then living, without any words of inheritance, will be construed

as a covenant to stand seized to uses, and hence as passing a fee to the takers after the daughter."

Under the foregoing authorities, the *intention* of the grantor, as plainly expressed in the deed, contravenes no rule of law. The word "issue" is used in the restrictive sense of children, and the rule in *Shelley's case* has no application, and the deed must be considered a covenant to stand seized to uses, conveying a life estate to the children of W. W. Stokes, with a fee-simple to their children at the death of the first takers. The relief prayed for in the complaint must be denied.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same hereby is, reversed.

MR. CHIEF JUSTICE STABLER, and MESSRS. JUSTICES BONHAM and BAKER, concur.

MR. JUSTICE CARTER did not participate.