14662

ELLIOTT *ET AL.* v. BRISTOW *ET AL.*

(196 S. E., 378)

September, 1937.

*Messrs. Wm. H. Smith* and *Benet, Shand & McGowan,* for appellants,

*Messrs. Charles B. Elliott* and *J. D. Gilland,* for respondent, Maria Croft Jennings, Mrs. Julia S. Parker and other respondents,

*Mr. Charlton DuRant,* for certain respondents,

*Messrs. Truluck & Truluck,* for other respondents.

April 8, 1938.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

On August 2, 1871, one Charles McAllister, of Williamsburg County, made, executed, and delivered the following deed; the description of the land and the personal property conveyed being here omitted:

"Know all men by these presents, that I, Charles McAllister, planter of the county of Williamsburg, in the State aforesaid, for and in consideration of the natural love and affection which I have and bear towards my daughter, Sarah Margaret Kelley and my two grandchildren, Maria Ada Amarinthia Kelley and Charles Middleton Kelley, wife and children of Dr. Middleton Kelley, and for and in consideration of the better means of their support during their natural

lives, I do freely, give, grant, bargain, sell and convey unto the said Sarah Margaret Kelley, during her natural life for her own separate use and benefit and at her death the said mentioned property in this deed of gift, named, was then to become the absolute property of my two grandchildren above mentioned, the said Maria Ada Amarinthia Kelley and Charles Middleton Kelley, to-wit: * * *

· "Together with all and singular the rights, members hereditaments and appurtenances thereunto belonging or in anywise incident or appertaining. To have and to hold all and singular the said real estate and said perishable property unto the said Sarah Margaret Kelley during her natural life and at her death unto the said Maria Ada Amarinthia Kelley and Charles Middleton Kelley.

"And I do hereby bind myself, my heirs and executors and to warrant and forever defend all and singular the said mentioned property unto the said Sarah Margaret Kelley, Maria Ada Amarinthia Kelley and Charles Middleton Kelley and to them and to their heirs and assigns forever."

It appears that Charles McAllister died some time during the year 1876; and that after the death of Sarah Margaret Kelley, his daughter, in 1887, Charles Middleton Kelley and Maria Ada Amarinthia Kelley, the grandchildren, divided the property which they owned in common, and thereafter by successive deeds the real estate, the subject of this litigation, came into the possession of the Receivers of Peoples State Bank of South Carolina, the plaintiffs herein. It is alleged in the complaint that at one of the public sales conducted by the Receivers, the property in question was sold to one Dr. Nesmith, who thereafter "refused to comply with his bid on the grounds that the deed aforementioned * * * did not convey a fee simple title to the two grandchildren of Charles McAllister. * * *

This action was then brought by the plaintiffs against the heirs of Charles McAllister and any assignees or devisees of such heirs, for the purpose of having the Court "pass an order decreeing a fee simple title in them," as such Receivers,

to the real estate mentioned and described in their complaint. Certain of the defendants answered or demurred, alleging that the deed under which the plaintiffs claimed—there being no words of inheritance in either the granting clause or in the habendum—conveyed to the grantees named only life estates in the property therein described, with the fee remaining in Charles McAllister and descending to his heirs; that upon the determination of such life estates, McAllister's heirs and their assigns became entitled to the immediate possession of such property; and that they claimed the right to have it partitioned among them. The defendants, Eleida Kelley and Leland Kelley, however, admitted by their answer the allegations of the complaint, and asked that the prayer thereof be granted. We may here add that Charles Middleton Kelley, who was predeceased by his sister, Maria Ada Kelley, died in 1936, prior to the commencement of this action.

The matter was heard by Judge Dennis at chambers; a small amount of testimony being taken "as to the accuracy of the heirs of Charles McAllister as alleged and testimony as to the accuracy of the allegations of the complaint otherwise. It was agreed by all parties present that the only issue was the determination of the instrument set forth in the complaint and as that instrument might be determined the necessary procedure arising therefrom in accordance with the pleadings." The Court rejected the contention of the plaintiffs, that the deed in question should be construed as a covenant to stand seized to uses, and held that "the entire estate conveyed passed out of the grantor upon the delivery of the deed, the same creating a life estate to Sarah Margaret Kelley and a vested life estate in remainder in the two grandchildren therein named," citing *McMichael v. McMichael,* 51 S. C., 555, 29 S. E., 403; *McMillan v. Hughes,* 88 S. C., 296, 70 S. E., 804; *Lanham v. Haynes,* 101 S. C., 424, 85 S. E., 966; *Boyce v. Mosely,* 102 S. C., 361, 86 S. E., 771, in support of this conclusion.

It was said in *Gaines v. Sullivan,* 117 S. C., 475, 109 S. E., *276, 277,* that "the appellation 'a covenant to stand seized to uses' was in its origin a pure fiction, created to avoid the great hardship that followed inexpert conveyancing in which words of inheritance were ignorantly or negligently omitted. Whatever its origin, it is now well established as a rule of property."

"It is an ancient rule of the common law," Blackstone writes, "that an estate of freehold cannot be created to commence in future; but it ought to take effect presently, either in possession or remainder; because, at common law, no freehold in lands could pass without livery of seizin, which must operate either immediately or not at all. It would, therefore, be contradictory, if an estate, which is not to commence till hereafter, could be granted by a conveyance which imports an immediate possession." This rule of the common law, however, was nullified by the statute of uses. 27 Henry VIII, Chapter 10.

In 8 R. C. L., 1120, the writer says: "The statute of uses provided that the legal title should follow the beneficial interest, and vest in the *cestuis que* use 'after such quality, manner, form and condition as they had before in or to the use, confidence or trust that was in them.' Prior to the statute, deeds * * * of covenant to stand seized did not operate to convey the title, but only the right to the beneficial use. As affecting the land itself, they were regarded as executory or unexecuted contracts. At law they were of no force as conveyances. In equity they were enforced by requiring him in whom was the legal title to hold that title for the benefit of him to whom the right of use had thus been transferred. A covenant to stand seized to uses, therefore, came to be recognized as a peculiar species of conveyance, whereby a use was raised, and then the legal estate carried to the person having the use, by force of the statute of uses. The peculiarity of this conveyance turns on the consideration on which it is founded, and on its operation and effect to

create estates *in futuro.*" See *Chancellor v. Windham,* 1 Rich., 161, 42 Am. Dec. 411.

In the case at bar, counsel for the appellants have filed a well-prepared brief. They cite a number of decisions of this Court, *Milledge v. Lamar,* 4 Desaus. 617; *Chancellor v. Windham,* 1 Rich., 161, 42 Am. Dec., 411; *Ingram v. Porter,* 4 McCord., 198; *Dinkins v. Samuel,* 10 Rich., 66; *Watson v. Watson,* 24 S. C., 228, 58 Am. Rep., 247; *Gaines v. Sullivan, supra; Bank of Prosperity v. Dominick,* 116 S. C., 228, 107 S. E., 914; *First Carolinas Joint Stock Land Bank v. Ford,* 177 S. C., 40, 180 S. E., 562, and others, and seek to show by comparison and analysis that they are controlling here. We think, however, that the McAllister deed, when tested by the principles laid down in these cases, does not bear the construction contended for. In any event, we are of opinion that the very recent case of *Gowdy v. Kelley,* S. C., 194 S. E., 156, 160, and authorities there cited, are conclusive of the question here raised. The Court there said: "The respondent contends that the deed may be interpreted as a covenant to stand seized to uses, and that it presents every characteristic of such a deed: (1) Consideration of love and affection; (2) blood relationship; and (3) fee simple to commence *in futuro.* The deed does not permit of this construction. See *Bank of Prosperity v. Dominick,* 116 S. C., 228, 107 S. E., 914; *First Carolinas Joint Stock Land Bank v. Ford,* 177 S. C., 40, 180 S. E., 562."

We have examined with care the two deeds—the one before us and the one construed in the *Gowdy case.* They were made by the same grantor, one in 1870 and the other in 1871. The language involved is practically the same; and, despite certain slight differences, the deeds are unquestionably, we think, identical in legal effect. This Court, therefore, would not be warranted in holding that one of them cannot be interpreted as a covenant to stand seized, but that the other should be so construed. The fact—about which counsel for appellants make no contention—that the deed in this case contains the usual general warranty of title

to the grantees, "their heirs and assigns forever," has no controlling influence in the decision of the question before us. See *Fore v. Marion County Lumber Company*, 114 S. C., 501, 104 S. E., 179. The Circuit Judge committed no error in his construction of the deed, and we approve the conclusion reached by him.

We think, however, that the appellants, under the answer of the defendant Leland Kelley, admitting that the ownership of the entire property is in the plaintiffs, are entitled, as argued by counsel, to the undivided interest "devised to him by his aunt, Ada M. Moore"; such interest being that which Ada M. Moore inherited, or would have inherited, from her grandfather, Charles McAllister. In fact, counsel for certain respondents agree that it should be so adjudged.

The decree of Judge Dennis, therefore, is modified in that respect and to that extent, and, as so modified, it is affirmed.

MESSRS. JUSTICES BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.